[No. 2190]

STATE OF NEVADA, Ex Rel. GEORGE A. COLE, as Controller of the State of Nevada, Petitioner, *v.* MAJOR H. MILLER, as County Treasurer of the County of Elko, State of Nevada, Respondent.

[151 Pac. 943]

1. TAXATION—DISPOSITION OF TAXES—RIGHT OF STATE.

Rev. Laws, sec. 3748, declares that the county auditors shall on the first Monday of each month furnish the controller a statement of all moneys in the respective county treasuries, that the treasurers shall always hold themselves ready to pay all moneys in their hands belonging to the state whenever required to do so by order of the state controller and state treasurer, and that on making payments into the state treasury the county treasurer shall furnish the controller with a statement. Stats. 1913, c. 134, sec. 7, declares that any property owner who has initiated a court proceeding for redress from any increased valuation, and who shall have paid his December installment of taxes, may pay his June installment in two payments, one payment in a sum which, when added to the December installment, shall represent the amount of taxes payable if computed on the old valuation, plus any improvements, and the other the balance of the full June installment; which sum shall be kept as a special deposit until the court by its findings shall award it, and from which, if the property owner be successful, he shall be entitled to a refund. Taxpayers paid their taxes under protest, but did not commence any court action. *Held*, that they were entitled to relief only upon complying with the terms of the statute, and the county treasurer could not withhold settlement from the state treasurer on the ground that the taxes had been paid under protest.

ORIGINAL PROCEEDING by the State, on the relation of George A. Cole, as State Controller, for a writ of *mandamus* against Major H. Miller, as County Treasurer of the County of Elko. **Writ issued.**

*Geo. B. Thatcher,* Attorney-General, for Petitioner:

The taxpayers who paid under protest have not complied with the provisions of section 7 of the act of 1913, creating the Nevada Tax Commission. "The legislature is vested with the sole power of providing the modes by which state and county taxes shall be levied, assessed and collected." ( *Wells, Fargo & Co.* v. *Dayton,* 11 Nev. 166. )

Courts will not countenance evasion of a revenue law. (*Drexler* v. *Tyrrell,* 15 Nev. 135.)

*E. P. Carville,* District Attorney of Elko County, for Respondent.

By the Court, McCARRAN, J. :

This is an original proceeding in *mandamus.* Petitioner, as controller of the State of Nevada, seeks to compel the respondent, as county treasurer of Elko County, to settle with petitioner for the state's portion of a certain sum of money collected by respondent, in his official capacity, from various property owners in Elko County.

It is set forth in the petition that during the latter part of the year 1914 the respondent, as county treasurer of Elko County, collected from various residents of Elko County the sum of $71,620.97, as the first installment of taxes for the year 1914. It appears that this entire sum was paid by the taxpayers of Elko County under protest, and because of such protest respondent refuses to apportion the moneys received by him in his official capacity, and has failed to settle with the state for its portion of the money thus collected.

Section 3748, Revised Laws of Nevada, prescribes that:

"The county auditors of the several counties shall, on the first Monday of each month, mail or express, prepaid,

to the state controller, a statement of all state moneys in the respective county treasuries and from what sources derived, and the treasurers of the respective counties shall at all times hold themselves in readiness to settle and pay all moneys in their hands belonging to the state, whenever required so to do by order signed by the state controller and state treasurer, who are hereby authorized to draw such order whenever they deem it necessary. At the time the treasurer of any county shall pay to the state treasurer moneys required to be paid by order of the treasurer and controller, it shall be the duty of such county treasurer to deliver to the controller, a statement showing the amount so paid, and all sources from which received, and when received. · The county treasurer shall, on the second Monday of June and December of each year, settle in full with the state controller, and send, in such manner as he shall designate, to the state treasurer, all funds which shall have come into his hands as county treasurer for the use and benefit of the state, taking therefor a receipt from the state treasurer, which receipt he shall cause to be filed with the controller. Before making payment, each county treasurer shall transmit to the state controller, by mail or otherwise, prepaid, a report from the county auditor, together with a duplicate thereof, stating specially the total amount collected, and the amount due the state from each particular source of revenue, the original of which shall be filed with the controller, who shall enter upon the same, and also upon the duplicate, the cash paid to the state treasurer and the amount of the expenses allowed; and the county treasurer shall thereafter file the duplicate report with the auditor of his county, whereupon the auditor shall balance the treasurer's account; and it shall be the duty of the auditor to furnish the county treasurer with the report, which such treasurer is required to produce in making his settlement with the state."

It is admitted by respondent that the provisions of the foregoing section, in so far as a settlement by him on the second Monday of December, 1914, and the second

Monday of June, 1915, is required, have not been complied with. The district attorney of Elko County, appearing for respondent, stipulated in open court that the proceedings be submitted upon the petition of the state controller and the brief of the attorney-general, with which he was in accord. We assume it is the position of respondent that, because the sum of money paid to him in his official capacity of treasurer of Elko County was paid by the respective taxpayers under protest, he cannot apportion the money, and hence cannot make settlement with the state.

Section 7 of an act entitled "An act in relation to the public revenues, creating the Nevada Tax Commission, defining its powers and duties, and matters relating thereto," etc. (Stats. 1913, p. 175), provides:

"Any property owner who has initiated a court proceeding for redress from any increased valuation of his property for assessment purposes, and who shall have paid his December installment of taxes thereon in full, may, on filing with the treasurer of the county a certificate of the clerk of any court that such issue is pending, pay his June installment in two separate payments, to wit: One payment in a sum which, when added to the December installment, shall represent the amount of taxes payable if computed on the valuation of the preceding fiscal year, plus the taxes on any improvements added since such preceding levy, and the other for the balance required to make up the full June installment; and said county treasurer shall receipt for the latter as a special deposit, to be held by such treasurer, undisbursed, until the court by its finding shall award it; and said property owner, in such case, shall not be liable for any penalty under the delinquent tax act; and if the court by its findings reduce the assessment valuation of such property, said county treasurer, on order of the court, shall refund from such special deposit an amount corresponding to such reduction, and shall transfer the remainder to the public revenues, and if the court shall not reduce the valuation of said property, then said

VOL. 38—32

county treasurer shall transfer the entire special deposit to the public revenues."

It is alleged in the petition, and not controverted or denied in any way, that, although the sum of money in the hands of respondent as county treasurer was paid in to him by the several taxpayers under protest, no action has been commenced by any of the protestant taxpayers, or by any other person in the county of which respondent is county treasurer, against the respondent or any officer having to do with the revenue system of the state, to recover the amount or any part of any tax levied against property in Elko County; in other words, it appears that while property owners of the county of Elko paid their 1914 taxes under protest, no action was commenced by any of them in any court on account of excessive valuation of their property.

It appears to us that by the provisions of the statute above set forth the steps to be taken by any taxpayer who, believing himself aggrieved by the assessment of taxation, seeks to relieve himself from such condition by access to the courts, are made plain and adequate. A mere filing of a protest with the public official authorized to receive taxes will not redress the wrong nor afford a remedy, unless the provisions of the statute enacted for such purpose be carried out by the party protesting. As was stated by this court in the case of *Wells, Fargo & Co.* v. *Dayton*, 11 Nev. 166:

"The legislature is invested with the sole power of providing the modes by which state and county taxes shall be levied, assessed, and collected, and it is essential that the modes prescribed, if within constitutional limits, should be faithfully carried out by the officers to whom is intrusted the duty of their enforcement."

Public officials, especially in the administration of that department of government having to do with revenue, its collection and apportionment, have before them for their guidance specific provisions found in legislative enactment. In the matter at bar, the duties of respondent as to the apportionment of the money received by

him from the respective taxpayers of his county are set forth in the section quoted. Unless restrained or prevented by some order or process of court, or legally notified of an action commenced, it would be the duty of such officials to carry out the provisions of the statute.

It is unnecessary for us to determine here as to the force or effect of a protest filed by a taxpayer in the payment of his taxes. The process available to the protestant for redress being set forth by the statute, it was one of which the protesting taxpayers in this instance might avail themselves. No attempt having been made by the protesting taxpayers to set the provisions of the statute in operation, no proceedings having been instituted to prevent the officials receiving the taxes from disposing of the same through the avenues provided by law, there was, in our judgment, no other course for respondent to pursue than that which the statute prescribes as his duty, namely, to settle with petitioner as the representative of the state.

The writ as prayed for should issue.

It is so ordered.