[File No. 6643.]

THE DEPARTMENT OF STATE HIGHWAYS OF THE STATE OF NORTH DAKOTA and J. S. Lamb, as State Highway Commissioner and the Officer in Charge of Said Department, Appellants, v. BERTA E. BAKER, as State Auditor of the State of North Dakota, and John Omland, as State Treasurer of the State of North Dakota, Respondents.

(290 N. W. 257.)

Opinion filed January 16, 1940.

*Chas. A. Verret, George F. Shafer* and *Robert H. Bosard,* for appellants.

*Alvin C. Strutz,* Attorney General, for respondents.

MORRIS, J. This is an appeal by the Department of State Highways and the State Highway Commissioner from an order of the district court denying an application for a writ of mandamus.

On June 30, 1926, the people of North Dakota approved an initiated measure known as the Motor Vehicle Fuel Tax Law, which obligated dealers as defined by the act, to pay a tax for the privilege of engaging in the business of selling motor vehicle fuel, the tax being measured by the number of gallons used and sold by the dealer. This initiated measure, as amended, is generally termed the Motor Vehicle Fuel Tax Law. The tax thereunder is 3 cents per gallon. The legislature of this state at its 1939 session, undertook to levy "a special license tax of 1 cent per gallon of motor vehicle fuel used or sold" by licensed dealers (N. D. Sess. Laws 1939, chap. 170). For the sake of brevity, we will hereafter refer to this tax as the 1 cent gas tax. Chapter 170 incorporates by reference many of the provisions of the motor vehicle fuel tax law including provisions for the assessment and collection of the tax. The state auditor has collected and deposited with the state treasurer about $320,000. Of this sum $141,523 has been paid by the taxpayers under written protest. Chapter 170, N. D. Session Laws 1939, provides that

the proceeds of the 1 cent gas tax shall be covered into the state. highway fund. Public moneys are required to be deposited with the state treasurer by § 186 of the Constitution as amended by the initiated measure adopted June 28, 1938. It is the duty of the state auditor to draw warrants on the state treasurer for disbursements authorized by law where there are sufficient funds on hand for payment thereof.

Section 4 of chapter 139, N. D. Session Laws 1929, prescribes the procedure incidental to the payment of estimates on highway contracts. Under this procedure it is the duty of the state auditor to draw warrants upon the state treasurer for the payment of intermediate estimate vouchers when approved for payment by the proper officer of the state highway department. A number of such vouchers representing a total of $266,500.86 have been presented to the state auditor who refuses to draw warrants in payment thereof. The state highway department seeks a writ of mandamus directing the auditor to issue the warrants. The state auditor, as a ground for refusal, asserts that the one cent gas tax law is unconstitutional. The specific sections of the Constitution which the state auditor claims are violated will be discussed later. The parties not only raise no question as to the right of the state auditor to challenge the constitutionality of the law in question, but they argue that she has such right. Nevertheless, we deem this question of such importance that it should be given consideration at this point.

There is no question as to the general rule that a subordinate ministerial officer to whom no injury can result and to whom no violation of duty can be imputed by reason of compliance with the statute may not question the constitutionality of the statute imposing such duty. 11 Am. Jur. 762; Constitutional Law, § 117; 16 C. J. S. 173; annotation in 30 A.L.R. 378. This rule, like most others, has its exceptions. It does not apply to all officers concerning all ministerial duties under all circumstances. The state auditor is a constitutional executive officer whose duty in this instance deals directly with the expenditure of public funds. She has been advised by the attorney general, who is her legal advisor under the laws of this state, that the one cent gas tax law is unconstitutional. Furthermore, the matter is one of great public interest. It affects those who use state highways and those

who purchase motor vehicle fuel as well as one of the major departments of the state government.

At the outset we consider the fact that the law which the state auditor now challenges is the same law under which she collected the tax constituting the money now in question. It has been suggested that since the one cent gas tax law imposes the duty upon the state auditor of collecting the tax as well as of drawing warrants in connection with the disbursements of the proceeds, that she should have challenged the constitutionality by refusing to collect rather than by refusing to disburse after the collections were made.

In collecting the tax the auditor acts in the capacity of a tax collector, while she acts as a disbursing officer in the drawing of warrants against the funds collected. Each taxpayer has an immediate and direct interest in the matter of the tax collection and the right to question the constitutionality of the law under which collection is made may well be left to those thus directly interested. Public policy requires the tax collector to proceed with the collection of public revenue without undue delay. On the other hand public policy also requires the safeguarding of public funds by those charged with their care or disbursement. It would, therefore, seem that the fact that the state auditor is also the tax collector does not bar her from questioning the constitutionality of an act under which such disbursement is sought, even if the disbursement is provided for by the same statute under which collection is made.

Passing now to the right of the state auditor to raise a question of the constitutionality of an act and under the terms of which it is her ministerial duty to make disbursement, we find the weight of authority to be in favor of such right. Upon this point there seems to be no distinction between an officer who is the immediate custodian of the funds, such as the treasurer, and an officer whose duty it is to draw warrants upon funds in the custody of the treasurer.

The performance of the state auditor's duty with respect to the drawing of warrants on the state highway fund gives her a direct interest in the disposition of the moneys collected under the one cent gas tax law. Under § 186 of the Constitution there are appropriated the funds allocated under the law to the state highway department. The one cent

gas tax law allocates to that department the proceeds of the tax. If the law is constitutional the allocation is valid and the proceeds belong in the state highway fund. On the other hand, if the law is unconstitutional the allocation falls and under § 186 of the Constitution the money being public money goes into the state treasury "and shall be paid out and disbursed only pursuant to appropriation first made by the legislature." The money has been paid over to the state treasurer. If the one cent gas tax law is constitutional it is available to pay proper bills of the state highway department. If the gas tax law is unconstitutional the proceeds do not belong in the highway fund and are not available to pay bills of the highway department nor are they in any way subject to vouchers or orders of that department. Under chapter 261, N. D. Session Laws 1931, it is the duty of the state auditor "To draw warrants on the State Treasurer for the payment of money directed by law to be paid out of the treasury; which warrants shall be numbered consecutively in the order in which they are drawn; but no warrant shall be drawn unless authorized by law, nor unless there are funds in the treasury applicable to the payment thereof to meet the same; provided, that in case of emergency, and in anticipation of taxes already levied and in process of collection, the Auditor, with the advice and consent of the State Auditing Board, may issue warrants in payment of duly authorized vouchers which warrants so issued shall be paid by the State Treasurer out of any funds in his hands other than sinking funds and funds, the use of which is limited by the Constitution of this state. Every warrant must be drawn upon the fund out of which it is payable and specify for what it is drawn and when the liability accrued."

If the law in question is unconstitutional the drawing of the warrants which this proceeding seeks to coerce, would be an act violative of the statutory duty of the state auditor in that there would not be "funds in the treasury applicable to the payment thereof to meet the same."

In State ex rel. Davis-Smith Co. v. Clausen, 65 Wash. 156, 117 P. 1101, 37 L.R.A.(N.S.) 466, 2 N. C. C. A. 823, 3 N. C. C. A. 599, the supreme court of Washington permitted the state auditor to raise the question of the constitutionality of the Workmen's Compensation Act in a mandamus proceeding. It was sought to compel the state au-

ditor to issue a warrant on the state treasurer in payment of an obligation incurred by the industrial insurance department. In disposing of the contention that the state auditor could not raise the question of constitutionality in that proceeding, the court said, "If it be true that an act of the legislature authorizing the disbursement of public money is unconstitutional, to inquire into it on the objection of an officer having in charge such disbursement may save an expenditure that would be otherwise lost to the state were the court to await the suggestion of the question by some private litigant injuriously affected by the act. There is no merit in the objection that the officer is without interest in the proceeding. He is charged with the duty of conserving the public funds, and consequently must be held to have an interest in any proceeding which directly tends to that end."

In State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854, it was held that the state comptroller has a right in a mandamus proceeding to challenge the constitutionality of an act providing for the disbursement of public funds if the comptroller entertains grave doubt as to the validity of the act, and that the case fell under the rule that if a law requires a ministerial officer to perform duties pertaining to the disbursement of public funds his official capacity gives him such an interest in the matter that he may challenge the validity of the act. The same conclusion was reached in a similar case in Corsicana Cotton Mills v. Sheppard, 123 Tex. 352, 71 S. W. (2d) 247. In State ex rel. Florida Portland Cement Co. v. Hale, 129 Fla. 588, 176 So. 577, it is said, "One who is required to pay out public funds should be at least reasonably certain that the same are paid out under valid law. See State ex rel. Harrell v. Cone, 139 Fla. 158, 177 So. 854, filed at this term of the court. See also State ex rel. Juvenal v. Neville, 123 Fla. 745, 167 So. 650; Coppedge v. State, 99 Fla. 358, 127 So. 319."

In addition to these recent cases we find a number of others holding that the state auditor has the right when called upon to issue warrants for money appropriated by legislative act to question the validity of the act making the appropriation. Norman v. Kentucky Bd. of Managers, 93 Ky. 537, 20 S. W. 901, 18 L.R.A. 556; Stockman v. Leddy, 55 Colo. 24, 129 P. 220, Ann. Cas. 1916B, 1052; People ex rel. Manville v. Leddy, 53 Colo. 109, 123 P. 824.

Cases upholding the right of a treasurer to question the constitutionality of an act under which it is sought to disburse moneys in his custody are, Rhea v. Newman, 153 Ky. 604, 156 S. W. 154, 44 L.R.A. (N.S.) 989; State v. Snyder, 29 Wyo. 163, 212 P. 758; in Com. ex rel. Atty. Gen. v. Mathues, 210 Pa. 372, 59 A. 961, an action was brought in mandamus to compel the state treasurer to pay certain warrants drawn by the state auditor pursuant to statute. The attorney general advised the state treasurer that the statute under which the warrants were drawn was constitutional and binding upon him. Nevertheless, the treasurer refused payment upon the ground that the statute was unconstitutional. The attorney general then instituted a mandamus proceeding to compel payment. The court considered and determined the question of constitutionality raised by the treasurer as a defense.

In McDermont v. Dinnie, 6 N. D. 278, 69 N. W. 294, this court considered the constitutionality of a legislative act which established municipal courts in cities having a population of five thousand inhabitants or over. The act also abolished courts of police magistrates in these cities. In Grand Forks a judge of the municipal court was elected and qualified under the statute. He presented to the city officials the necessary vouchers for his salary as judge. These officials refused to draw warrants for such salary. A proceeding in mandamus was brought to compel the issuance of salary warrants. This court held the statute to be unconstitutional and void. In the course of the opinion it is said, "Nor is there, in our judgment, any force in the point that these defendants cannot raise the question of the unconstitutionality of this statute. They are municipal officers, charged by their oaths of office with the duty of protecting the funds of the municipality. It would be a violation of their official duty should they proceed to pay out the funds of the city upon unwarranted and illegal claims. The writ cannot be invoked to compel an officer to do an illegal act. State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 N. D. 243, 55 N. W. 585."

In State ex rel. Wiles v. Williams, 232 Mo. 56, 133 S. W. 1, 34 L.R.A.(N.S.) 1060, the court had before it a petition for mandamus seeking to compel the state treasurer to pay a warrant drawn upon funds in his custody. The court recognized the general rule that a ministerial officer may not question the constitutionality of a law which

imposes only ministerial duties upon him but pointed out that in that case the attorney general had advised the state treasurer in a written opinion that the act in question was unconstitutional. The court held this case to be an exception to the general rule and permitted the question of constitutionality to be raised.

In other cases the courts have permitted the question of constitutionality to be raised in defense to a mandamus proceeding against a public officer where the question involved is one of general public interest. In State ex rel. Miller v. Leech, 33 N. D. 513, 157 N. W. 492, the state tax commission sought to mandamus a county auditor to spread upon his records certain tax assessments made by the commission. The auditor raised the question of the constitutionality of the act under which the assessments were made. The tax commission challenged his right as a ministerial officer to raise the question of constitutionality. In permitting the question to be raised by the county auditor, the court said, "He could not have refused to obey the commands of the Commission arbitrarily or capriciously, for the mere purpose of having a mooted point of law decided in this assessment matter, and in the absence of a court decision passing upon the constitutionality of this act. But under the circumstances in which this official found himself placed, one or the other alternative must be followed. He must choose and under his official oath must follow the law to the best of his ability. And when acting as he has here, inasmuch as he is represented throughout these proceedings by the state's attorney of the county, elected to advise him with other county officials in such dilemmas, his decision under legal advice upon the law is required by these petitioners. State ex rel. Wiles v. Williams, 232 Mo. 56, 133 S. W. 1, 34 L.R.A.(N.S.) 1060. And under such circumstances, in a matter of this importance, he may invoke the unconstitutionality of the law under which an apparently regular proceeding by taxation, a prima facie valid tax, has resulted and is sought to be overthrown by a purported substituted assessment. 'In cases where the duty to perform an act depends solely on the question whether a statute or ordinance is constitutional and valid, the question may sometimes be determined on a petition for mandamus.' 26 Cyc. 156. While courts should be slow to entertain suits invoking constitutionality, yet the circumstances here are exceptional and unusual. The public is interested in having a decision upon who

has the power to assess this class of public utilities. Every county auditor and many other local taxing officials are confronted yearly with this question, as is every owner of this class of property throughout the state. The matter might be considered as involving questions publici juris."

The view expressed in State ex rel. Miller v. Leech, 33 N. D. 513, 157 N. W. 492, supra, finds support in these cases from other jurisdictions. Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L.R.A.(N.S.) 83, Ann. Cas. 1914B, 1278; State ex rel. Test v. Steinwedel, 203 Ind. 457, 180 N. E. 865; Hindman v. Boyd, 42 Wash. 17, 84 P. 609; Montpelier v. Gates, 106 Vt. 116, 170 A. 473.

The case before us has three features which distinguish it from those cases to which the general rule is applied. Here the state auditor, who is a constitutional officer, is faced with a proceeding to compel her to disburse public funds under a statute which the attorney general, who is her legal advisor and is also a constitutional officer of the state, has advised her is unconstitutional. The question of constitutionality is of great public importance in that it directly affects a great number of people, the public revenue of the state, and one of the major departments of the state government. Under these circumstances we hold that the question of constitutionality may be raised by the state auditor.

Having determined that the state auditor may raise the question of the constitutionality of the one cent gas tax law, we now proceed to the consideration of that question. This act reads as follows: "From April 1, 1939 and until and up to the first day of July, 1941, every 'dealer' in 'motor vehicle fuels,' as defined in initiated measure approved June 30, 1926, and amendments thereto and commonly known as the 'Motor Vehicle Fuel Tax Law' of this State, shall pay in the manner, at the times and to the officer specified in said initiated measure of June 30, 1926, and apart from and in addition to any license tax or other tax now imposed upon or applicable to said motor vehicle fuels under the laws of this state, a license tax of one cent per gallon on all motor vehicle fuels used and sold by such dealer, and the proceeds of said special license tax of one cent per gallon is hereby appropriated and shall be allocated and transferred to the State Highway Fund as created by statute and be expended for such purposes only mentioned in the statute creating said State Highway Fund as may

come within the purview and restrictions of the acts of Congress and all amendments thereto granting regular and secondary Federal aid road funds for the construction and repair of Federal, State and feeder highways within this State. All definitions of terms, method of procedure for assessment and collection, provisions for reports by licensed dealers and revocation of licenses, method and procedure for refunds on tax exempt fuel sold or used, and penalties for violation and other general provisions by context applicable hereto now contained and provided in said initiated measure of June 30, 1926, and amendments thereto, shall apply and are hereby made applicable to the special license tax imposed under the terms and provisions of this act; provided, however, that all indemnity or surety bonds now provided in said initiated measure shall cover the tax hereby imposed and levied and that no bond additional to the ones provided for in said initiated measure shall be required from any licensed dealer or other person on account of the tax herein imposed; and provided further, that the total proceeds of the tax herein imposed shall be covered, as hereinbefore provided, in said State Highway Fund without any deduction whatever, other than deductions for lawful refunds to the persons and for the reasons applicable to the license tax imposed under the provisions of said initiated measure, and without any deduction for administrative and collection cost." (Laws 1939, chap. 170.)

In challenging the constitutionality of the act the state auditor asserts that it violates the provisions of §§ 62, 64 and 186 of the Constitution of the state of North Dakota. We first consider the challenge based upon § 64 which provides, "No bill shall be revised or amended, nor the provisions thereof extended or incorporated in any other bill by reference to its title only, but so much thereof as is revised, amended or extended or so incorporated shall be re-enacted and published at length."

This court considered this section of the Constitution in State v. Fargo Bottling Works Co. 19 N. D. 396, 124 N. W. 387, 26 L.R.A. (N.S.) 872, wherein it is said, "If § 64 of the Constitution is taken to mean that all sections of the general law in any manner affected or modified by an amendatory act shall be incorporated and published at length in the legislative bill containing the amendment, it may require the publication of large excerpts from the Code in every amendatory

act of considerable scope, and at each session of the legislature the amendments intended to be enacted will be hidden in the obscurity produced by publication and republication of volumes of matter from the existing general law. It is not conceivable that this constitutional provision was intended to require acts so useless and burdensome. 'The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words or to substitute one phrase for another in an act or section which was only referred to but not republished was well calculated to mislead the careless as to its effect, and was perhaps sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.' People ex rel. Drake v. Mahaney, 13 Mich. 481.''

In State ex rel. Gammons v. Shafer, 63 N. D. 128, 246 N. W. 874, a provision contained in an initiated measure reducing the salaries of certain state officials and employees was attacked on the ground that it violated § 64 of the Constitution and was, therefore, void. In the course of the opinion it is said that, "A law is amended, when it is, in whole or in part, permitted to remain, and something is added to it or taken from it, or it is in some way changed or altered to make it more complete or perfect, or to fit it the better to accomplish the object or purpose for which it was made, or some other object or purpose."

In that case it was held that the measure purported to amend existing laws as to salaries or compensation of public officials and employees of the state government and thus was violative of § 64 of the Constitution.

An examination of the statute now before us discloses that it does not amend or change any other statute either directly or by implication. It levies a tax of one cent per gallon on motor vehicle fuels used and sold by dealers. It allocates the proceeds of the tax to the state highway fund. It makes no change or alteration in any law providing for

motor vehicle fuel taxes. It levies a new and additional tax separate and apart from all other taxes. It is a creative not an amendatory law and is not subject to challenge as an amendment.

A serious challenge to the constitutionality of the act in question is presented by the assertion that the law incorporates by reference certain provisions of the motor vehicle fuel tax law and that the provisions so sought to be incorporated are not re-enacted and published at length. The provisions thus to be considered may be divided into two classes, namely, those which consist of definitions and procedural provisions including the methods of collection of the tax which the law imposes, and substantive provisions dealing with the rights and liabilities of dealers and users of motor vehicle fuel such as the liabilities for penalties and the right to refunds.

Section 64 of the Constitution must be construed and applied in a reasonable manner. It was not intended to require the re-enactment and publication at length of all definitions which might be employed in the construction of the law or all details of procedure which might be required in carrying out the essential purpose. It is an elemental rule of statutory construction that reference may be made to the usage of terms in other statutes and they may be considered as an aid in determining the legislative intent. The fact that another act may be specifically referred to does not restrict the application of this rule and such a reference, being a material aid in determining the legislative intent, is not violative of § 64. If the one cent gas tax law made no reference to the motor vehicle fuel tax law the rules of statutory construction would lead us to the former enactment in order to determine the legislative intent with which those terms were used without violating § 64 of the Constitution. The mere fact that the legislature has pointed out the path does not change the rule.

Bearing in mind that the one cent gas tax law is sufficient by its own terms to levy a tax and allocate the proceeds, we next consider the procedural provisions which refer to the motor vehicle fuel tax law in order to determine the manner, the time and to whom the tax shall be paid. With reference to these provisions we find the rule to be that where the statute levies the tax provided for, fixes the amount to be paid, and determines where this amount shall go, it is not always necessary to make specific provisions for detailed procedure of collection

in order to have a valid tax. Cobb v. Parnell, 183 Ark. 429, 36 S. W. (2d) 388; 59 C. J. 619. In Re McKennan, 25 S. D. 369, 126 N. W. 611, 33 L.R.A.(N.S.) 606, the supreme court considered the constitutionality of an inheritance tax statute. In the course of the opinion the court said, "It is contended that the inheritance law of this state is defective, in that no method by which the provisions thereof may be enforced is provided. Section 1 of the act clearly and expressly creates a liability on the part of the recipients of such inherited estates to pay the amount of any such tax to the county treasurer for the use of the state. There is no reason why the county treasurer might not maintain an ordinary action based upon the liability thus created to pay, against the receivers of any such inherited estates, to recover for the use of the state the tax under this statute, whenever there is a refusal to pay the same. The statutory liability to pay is just as strong in binding force and effect as if it were contractual." See also Denver Circle R. Co. v. Nestor, 10 Colo. 403, 15 P. 714.

We next consider the provisions of the one cent gas tax law which adopt by reference penalties for violation contained in the motor vehicle fuel tax law. These provisions do not directly affect the state auditor or state treasurer and are not involved unless their invalidity would result in the necessity of holding the entire act void. If we assume that they are void, that fact would not necessarily mean that the entire one cent gas tax act is void.

"Where a part of a statute is unconstitutional, that fact does not require the courts to declare the remainder void also, unless all the provisions are connected in subject-matter depending upon each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other." Malin v. Lamoure County, 27 N. D. 140, 145 N. W. 582, 50 L.R.A.(N.S.) 997, Ann. Cas. 1916C, 307.

When we bear in mind that we have the levy of the valid tax, the procedure for its collection, and a valid allocation of the proceeds, it appears that the general legislative purpose has been accomplished without the penalty. It can reasonably be said that the legislature would have passed the act even though no penalty provisions were contained therein, and that the invalidity of the penalty provisions will not

carry down the entire structure of this tax law as being unconstitutional. As was said in Minot Special School Dist. v. Olsness, 53 N. D. 683, 208 N. W. 968, 45 A.L.R. 1337, "Even though the alleged penalty provisions are invalid, the validity of the act is not affected thereby as these provisions may be stricken without in any manner affecting the other provisions of the act."

In State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292, the contention was made that the Public Utility Act was invalid because the penalties imposed for violation of an order of the railroad commissioners were so severe as to intimidate utility companies into compliance with orders regardless of their invalidity. In disposing of this contention, the court said, "Furthermore, if the penalty provisions are void, that will not affect the remainder of the statute. Those provisions did not form the inducement for the enactment of the law, they were merely added to aid in accomplishing the objects which the legislature had in mind. If they are invalid, they may be stricken from the law without in any manner affecting the validity of the provisions which are involved in the inquiry which the relators seek to have restrained."

Another provision of the act in question attempts by reference to extend all indemnity or surety bonds provided in the motor vehicle fuel tax law to cover the tax imposed by the one cent gas tax law. While it may be argued with some force that the provisions for giving bonds are procedural, the correctness of such contention is at least questionable, but conceding the unsoundness of this contention we find that the reasoning applicable to the penal provisions is also applicable to the bond provisions and that the unconstitutionality of this provision would not invalidate the tax.

A challenge to the constitutionality of another provision of the one cent gas tax law remains to be considered. It is because of the incorporation therein by reference of the "method and procedure for refunds on tax exempt fuel sold or used." This challenge has no force when considered in the light of legislative action pertaining to gas tax refunds and exemptions. The statute giving the right to gasoline tax refunds together with all the procedure connected therewith was repealed by the same legislature that enacted the one cent gas tax law. By chapter 147, N. D. Session Laws 1939, the system of allowing re-

funds for motor vehicle fuels was abolished and a new system established the following exemption:

"Tax exempt gasoline shall mean such gasoline sold in this state to be used solely for agricultural and industrial purposes without the payment of a tax, except such tax as may be required by a general sales tax law."

This act was messaged by the House of Representatives to the Governor at the same time as was the one cent gas tax law. Neither act contained an emergency clause. Both became laws of this state at the same time on July 1, 1939. They are contemporaneous acts. Thus it appears that while the one cent gas tax law contains words adopting by reference certain refund provisions yet by the contemporaneous enactment of chapter 147, N. D. Session Laws 1939, no refund provisions existed at the time the one cent gas tax law became effective. By the enactment of a tax exemption instead of a refund provision the legislature removed the refund provision from all gasoline tax laws and thus removed any possible objection to the constitutionality of the one cent gas tax law which might be based upon the ground that it incorporated refund provisions by reference.

The one cent gas tax law is further challenged on the grounds that it violates §§ 62 and 186 of the Constitution. Section 62 requires that appropriations other than those properly embraced in the general appropriation bill shall be made by separate bills each embracing one subject. Section 186 of the Constitution as amended by the initiated measure adopted June 28, 1938, and appearing at page 497, N. D. Session Laws 1939, provides that all public moneys of the state be paid over to the state treasurer and can be paid out and disbursed only pursuant to appropriation made by the legislature with certain specific exceptions. One of these exceptions applies to this case. Section 186 contains an appropriation of necessary funds required for certain purposes therein enumerated, among them being "the funds allocated under the law to the State Highway Department and the various counties for the construction, reconstruction, and maintenance of public roads." The state highway fund is a fund maintained by the state treasurer (see § 2976t15, 1925 Supplement to Compiled Laws) to which various legislatures have from time to time allocated certain moneys to provide for certain expenditures connected with the construction, reconstruc-

tion, and maintenance of certain highways and roads. The one cent gas tax law allocates the tax collected to the state highway fund. The money so allocated becomes "funds allocated under the law to the State Highway Department" and comes within the appropriation found in § 186 of the Constitution and is not violative thereof. The allocation of the proceeds of the one cent gas tax being in accordance with the provisions of § 186, it follows that it is not violative of § 62. Furthermore, the act in question embraces but one subject.

None of the challenges to the constitutionality of the one cent gas tax law being sustained, the writ should issue.

Reversed.

BURR, J., concurs.

NUESSLE, Ch. J. I am not prepared to subscribe to all that is said in the foregoing opinion, but I agree with the propositions stated in the syllabus and, therefore, concur in the result reached.

CHRISTIANSON, J. (dissenting). I agree that the decision of the trial court should be reversed; but I do not agree that the case either requires or justifies a determination of the questions sought to be raised by the defendant as to the constitutionality of chapter 170, Laws 1939. In my opinion no question of constitutionality is involved,—it was and is the duty of the state auditor to issue the warrants in question here without regard to whether said chapter 170 is or is not violative of the Constitution upon any of the grounds asserted by the state auditor.

For a number of years the laws of this state have required dealers in motor vehicle fuels to be licensed, and have required each licensed dealer to pay a "license tax of three cents per gallon on all motor vehicle fuel used and sold by him." The authority to issue licenses and to collect the license tax was conferred upon the state auditor. Initiated Measure, Laws 1927, p. 549; Laws 1929, chap. 166; Laws 1935, chap. 172. Chapter 170, Laws 1939, imposed upon each licensed dealer in motor vehicle fuel an additional "license tax of 1 cent per gallon on all motor vehicle fuels used and sold by such dealer," and provided that every such dealer should pay such tax "in the manner, at

the times and to the officer specified in said initiated measure of June 30, 1926." Said chap. 170, further provided: "The proceeds of said special license tax of one cent per gallon is hereby appropriated and shall be allocated and transferred to the State Highway Fund as created by statute and be expended for such purposes only mentioned in the statute creating said State Highway Fund. . . ." Id. § 1.

The State Highway Fund was created by the Legislative Assembly in 1919. Laws 1919, chap. 182; 1925 Supplement, § 2976t15. In 1929 the Legislative Assembly enacted a law entitled "An Act regulating the business procedure of the department of state highways, the making, certification, auditing and payment of pay rolls and the making, certification and auditing of payment of contract estimates." Laws 1929, chap. 139. This Act provides:

"Whenever an estimate or allowance for payment, except a final estimate, or, payment subsequent to a final estimate, is allowed, or granted, on a contract entered into by the department of state highways and the same is vouchered by the department for presentation to the state auditor, . . . the chief engineer of the said department shall make the following certificate. . . ."

"After the same has been approved for payment by the secretary, or chief administrative officer, of the state highway department, the same shall be presented to the state auditor . . . for payment. The state auditor shall thereupon draw his warrant therefor as provided by law without submitting such voucher or claim to the state auditing board for examination and allowance. . . ." Id. § 4.

Chapter 170, Laws 1939, went into effect July 1st, 1939. It is undisputed that the state auditor at once assumed the duties which that law placed upon her, and collected from the licensed dealers in motor vehicle fuels the tax which it prescribes, and transmitted the moneys collected to the state treasurer, who in turn credited them to the State Highway Fund.

In the petition in this case it is alleged: "Between the 1st day of July, 1939 . . . and the 30th day of November, the above named respondent, as required by statute, collected from the licensed motor fuel dealers of this state a total sum of $320,069.95 representing one cent per gallon license tax levied and imposed under the provisions of chapter 170, . . . and has . . . deposited the same with the

state treasurer . . . and that the said sum, and the whole thereof, has been credited by the said state treasurer to the said 'State Highway Fund,' and is now there held subject to disbursement by the Department of State Highways and its State Highway Commissioner in the manner and for the purposes allowed by statute."

It is further alleged that there have been presented to the state auditor fifty-four "Intermediate Estimate Vouchers," aggregating in all $266,500.86, under contracts for the construction of highways, and that such vouchers bear the certificate of the Chief Engineer and the approval for payment by the State Highway Commissioner as required by chapter 139, Laws 1929. Copies of the vouchers, of the certificate of the Chief Engineer, and of the approval for payment by the State Highway Commissioner indorsed thereon, are attached to and made part of the petition.

These allegations are not denied, and stand admitted. In the return of the respondent, state auditor, it is alleged:

"That it is the duty of the state auditor to collect the special license tax of 1 cent per gallon imposed upon motor vehicle fuels by chapter 170, Session Laws 1939, and to pay the amount so collected monthly over to the state treasurer for the deposit thereof by him to the credit of the state."

"That your respondent as state auditor has collected approximately three hundred and twenty thousand dollars ($320,000.00) from the one cent special license tax, pursuant to chapter 170, Session Laws 1939, and that about one hundred and forty-one thousand, five hundred and twenty-three dollars ($141,523) of the total amount so collected was paid by the taxpayers to this respondent under written protest."

Under the Constitution the state auditor has such powers and duties as shall be "prescribed by law." N. D. Const. § 83.

The power and duty of the state auditor incident to the licensing of dealers in motor vehicle fuel, and the collection of the license taxes, are measured solely by the law which confers the power and imposes the duty. The legislature might have imposed that duty upon some other officer, or created a new office, and imposed the duty upon the incumbent of such office. The duty of the state auditor incident to the collection of a license tax from a dealer in motor vehicle fuel is terminated when the moneys she collects have been transmitted to the state

treasurer. Her duty is then discharged, her control over the moneys and her responsibility for their safety and disbursement are terminated. People v. Williams, 3 Thomp. & C. (N. Y.) 338.

This case involves no act which the respondent, state auditor, is required to perform under chapter 170, Laws 1939. It involves the drawing of a warrant or warrants which she is required to draw under chapter 139, Laws 1929, against a fund created by chapter 182, Laws 1919 (§ 2976t15 Supp.),—a fund into which moneys received from sources other than taxes collected under chapter 170, Laws 1939, also, are and have been allocated. The vouchers that have been presented to the state auditor are conceded to be in proper form, and represent valid obligations payable out of the State Highway Fund,—obligations that must be paid when there are moneys available in such Fund, even though none of the collections made under said chapter 170 went into the Fund. Under the plain words of chapter 139, Laws 1929, the state auditor has only a ministerial duty to perform as to the vouchers in question here. Clearly, there would be no personal liability on the part of the state auditor for the taxes she has collected and transmitted to the state treasurer under said chapter 170. People v. Williams, 3 Thomp. & C. (N. Y.) 338, supra; 4 Cooley, Taxation, 4th ed. § 1629; 24 Cal. Jur. § 270; 61 C. J. pp. 1001, 1002, § 1279. The state has consented to be sued for any claim that may exist on account of taxes illegally collected from a taxpayer and paid into the state treasury. Ford Motor Co. v. State, 59 N. D. 792, 231 N. W. 883. Hence, in case taxes are collected illegally and paid into the state treasury, the legal responsibility and liability for reimbursement of the taxpayer is upon the state and not upon the collector. 61 C. J. pp. 1001, 1002, § 1279.

The function of this court "is to determine controversies between litigants." Langer v. State, ante, 129, 284 N. W. 238, 250; Self Insurer's Asso. v. State Industrial Commission, 224 N. Y. 13, 119 N. E. 1027, 1028. The Constitution of this state deprives this court of power to give advisory opinions. It may properly decide a controversy only when the question in dispute is real and not merely abstract or hypothetical, and when it is raised by one who has an interest in and a legal right to raise it and asserted against one who has an adverse interest.

Langer v. State, ante, 129, 284 N. W. 238. This court sits "not to review or revise the legislative action, but to enforce the legislative will" (Cooley, Constitutional Limitations, 7th ed. pp. 227, 228), and it is only when, in a justiciable controversy, a party who has an interest in and a legal right to raise the question that the court may determine whether a statute contravenes any provision of the Constitution.

"It is a firmly established principle of law that the constitutionality of a statute or ordinance may not be attacked by one whose rights are not, or are not about to be, adversely affected by the operation of the statute. This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. One of the many variations of this rule is the principle that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the Constitution. A constitutional question may not be raised by one whose rights are not directly and certainly affected, nor in a case where no attempt is being made to enforce the provision attacked. In other words, one may attack the constitutionality of a statute only when and so far as it is being or is about to be applied to his disadvantage; and to raise the question he must show that the alleged unconstitutional feature of the statute injures him and so operates as to deprive him of a constitutional right, and, of course, it is prerequisite that he establish in himself the claimed right which is alleged to be infringed.

"It is not sufficient that the statute is unconstitutional as to other persons or classes of persons; it must affirmatively appear that the person attacking the statute comes within the class of persons affected by it." 16 C. J. S. pp. 157–164, § 76. See also 11 Am. Jur. 748–753, Constitutional Law, § 111.

The Supreme Court of the United States has said: "Only those whose rights are directly affected can properly question the constitutionality of a state statute, and invoke our jurisdiction in respect thereto." Hendrick v. Maryland, 235 U. S. 610, 59 L. ed. 385, 35 S. Ct. 140.

This rule was stated and applied by this court in King v. Baker, ante, 581, 288 N. W. 565, 566.

The general principle that the constitutionality of a statute cannot

be questioned by one whose rights are not affected thereby, and who has no interest in defeating the enforcement and operation of the law is, of course, applicable to public officers. 11 Am. Jur. 762, Constitutional Law, § 117; 16 C. J. S. pp. 157, 173. While there is general agreement upon the principle, there is considerable contrariety in the adjudicated cases as to what clothes a public officer with sufficient interest to raise the question of constitutionality. It may be said, however, that the adjudicated cases all hold that the officer must have an interest,—either a personal interest or an interest arising because the duties of his office are such as to charge him with the requisite authority to attack the constitutionality of the statute.

No case has been cited, and none has been found, where a public officer charged with the duty of drawing a warrant in payment of a duly audited valid claim has been heard to say that certain moneys in the fund on which the warrant is required to be drawn are the proceeds of a tax that has been laid and collected under an unconstitutional statute, and, hence, may not be expended in payment of the warrant. An examination of the authorities cited in the prevailing opinion in this case discloses that in those cases the action sought to be enforced was one that was "directed" or "required" by the legislative enactment whose constitutionality was challenged, and which action would be illegal if the act were invalid. In the cases cited which involve the payment of claims, the validity and legality of the claims themselves were the issue, that is, the claims involved arose under and had their existence solely by virtue of the statutes which were assailed, and if the statutes were unconstitutional the payment of the claims would result in expenditure of public funds for a purpose that was forbidden by the Constitution. In the majority opinion some point is made that the advice of the attorney general is a circumstance tending to show that the state auditor has sufficient interest to raise the constitutional question, and the decision of the supreme court of Missouri in State ex rel. Wiles v. Williams, 232 Mo. 56, 133 S. W. 1, 34 L.R.A.(N.S.) 1060, is cited in support of the proposition. The case cited involved a warrant issued to a prosecuting attorney for salary. The Attorney General in discharge of his official duty rendered an opinion to the county court to the effect that the statute, under which the claim for salary arose, and under which the warrant was issued, was unconstitutional, and the

county court, acting on such opinion, entered a formal order directing the treasurer not to pay the warrant, and informing him that he and his official surety would be held liable for any moneys of the county that were paid out upon the warrant. It is unnecessary to discuss whether the decision of the supreme court of Missouri was correct or incorrect—the decision obviously distinguishes itself from this case. In that case, too, the claim itself had its existence in a statute which was claimed to be unconstitutional. If the statute were invalid, there was no claim whatsoever and the county was not indebted upon the claim for which the warrant had been drawn.

In this case it does not appear that the respondent has been advised by the attorney general not to draw the warrants in question here. The only allegation in the return of the state auditor concerning the question of advice is to the effect that the respondent has "been informed and advised the fact to be that chapter 170, Session Laws 1939, is null and void and that your respondents, upon such advice, allege that chapter 170, Session Laws 1939, is unconstitutional in that it violates §§ 62, 64 and 186, as amended, of the state Constitution." Whether the advice referred to in the return of the respondent was given by the attorney general, and if so when it was given, is not stated.

As said, the vouchers in question here admittedly represent valid claims against the state. They did not arise under the statute which is claimed to be unconstitutional. They had their existence wholly outside of such statute. The respondent, state auditor, has not been asked to perform any act under the statute, the validity of which is assailed. The duty of the auditor to draw the warrants exists by virtue of a wholly different law. The respondent, state auditor, has performed every duty that the statute which is assailed imposed upon her. Taxes have been collected and the proceeds transmitted to the state treasurer. Taxes have been collected for more than six months, and there is no claim that any suit for recovery of the taxes said to have been paid under protest has been instituted. State ex rel. Cole v. Miller, 38 Nev. 494, 151 P. 943. The greater portion of the taxes have been paid without any protest. Such taxes were paid to the respondent under the terms of the law and with the unquestioned representation to the taxpayers that the moneys paid would be expended for the purposes specified in the statute and not otherwise.

In my opinion, the respondent, state auditor, cannot be heard to say that said chapter 170, or any part thereof, is unconstitutional. She has no such interest as to entitle her to raise the constitutional question. She has no personal interest that can possibly be affected. She is charged with no official duty which will be violated by the performance of the act sought to be enforced in this proceeding. No public interest would be subserved if the contention of unconstitutionality were sustained. In no event, can the state auditor be heard to say that the moneys collected as taxes under chapter 170, Laws 1939, do not belong in the fund in which the taxpayers who made such payments were informed by the terms of the act that the moneys would be placed. Read v. Newark, 103 N. J. L. 60, 134 A. 757; Liberty Twp. v. Hutchinson County, 7 S. D. 530, 64 N. W. 1117. See also People v. Williams, 3 Thomp. & C. (N. Y.) 338, and State ex rel. Cole v. Miller, 38 Nev. 494, 151 P. 943, supra.

Inasmuch as the court, speaking through the majority, holds that the constitutional questions raised by the respondent, state auditor, are here for determination, I deem it proper to say that I agree with the views expressed on such questions in the prevailing opinion. I am authorized to say that Judge Burke concurs in this opinion.

BURKE, J., concurs in dissenting opinion.