[No. 12914.   *En Banc.*   September 8, 1915.]

THE STATE OF WASHINGTON, *on the Relation of Independent Asphalt Paving Company, Respondent,* v. HIRAM C. GILL, *Mayor of the City of Seattle, Appellant.*[1]

MUNICIPAL CORPORATIONS—ORDINANCES—ENACTMENT—VETO.   The provision of the Seattle charter, art. 8, § 11, requiring the unanimous vote of all members of the city council to order the grading of a street not initiated by petition, does not require a unanimous vote to override the mayor's veto of such an ordinance originally passed by a unanimous vote; in view of art. 4, § 16, providing that, upon a reconsideration, the council may override the mayor's veto by a two-thirds vote of all the members of the council.

SAME—PUBLIC IMPROVEMENTS—PROCEEDINGS—ESTIMATES—RESOLUTIONS—ORDINANCE.   3 Rem. & Bal. Code, § 7892-14, authorizing an enlarged district in case of special benefits to property extending beyond the boundaries of the district, provides that the petition or resolution for such enlarged district shall specify the fixed proportionate amount to be assessed against the property in the enlarged district; hence it is not necessary that the final ordinance specify the proportion to be charged to the enlarged district.

MANDAMUS—TO OFFICERS—MINISTERIAL ACTS.   Where a mayor refused to approve a contractor's bond, admitted to be sufficient in amount and form, solely on the ground of the invalidity of the proceedings, mandamus is the proper remedy to compel the approval; since his duty becomes ministerial upon finding the proceedings valid.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 24, 1915, in favor of the plaintiff, upon overruling a demurrer to the affidavit, in an action for a writ of mandamus to compel the approval of a contractor's bond given to secure performance of a local improvement.   Affirmed.

*James E. Bradford* and *William B. Allison,* for appellant.

*John W. Roberts* and *Shorett, McLaren & Shorett,* for respondent.

[1]Reported in 151 Pac. 498.

PARKER, J.—The relator, Independent Asphalt Paving Company, seeks by mandamus to compel the defendant, Hiram C. Gill, as mayor of Seattle, to approve a bond given by it to the city of Seattle to secure the faithful performance of a local street improvement contract awarded to it upon competitive bids. The defendant demurred to the affidavit of the relator alleging facts upon which it rested its right to the relief prayed for. The superior court overruled the demurrer, when the defendant elected to stand thereon and declined to plead further. Thereupon judgment was rendered against the defendant, requiring him, as mayor, to approve the bond tendered by the relator, as prayed for. From this judgment, the defendant has appealed to this court.

The facts alleged in relator's affidavit, so far as necessary to be here noticed, may be summarized as follows: In May, 1914, the city of Seattle initiated, by resolution, a local street improvement proceeding, the improvement contemplated to be paid for by special assessment against the property benefited thereby. Thereafter, in due course, in November, 1914, the city council passed an ordinance providing for the improvement. The ordinance was passed by the unanimous vote of all of the nine members of the city council. Thereafter, in due course, the ordinance, having been presented to appellant as mayor, was by him vetoed and returned to the council without his approval. Thereafter, in due course, the council, by more than a two-thirds vote of all its members, passed the ordinance over the veto of the mayor, eight members voting for and one voting against the passage of the ordinance notwithstanding the mayor's veto. Thereafter, such proceedings were had that bids were invited for the construction of the improvement. Upon receiving bids by the proper city authorities, relator was found to be the lowest bidder, and thereupon the contract for the construction of the improvement was awarded to it. Relator was required to furnish a bond to secure the faithful per-

formance of the contract in the sum of $60,000, with a surety company as surety thereon, before its contract became effective. A bond, conceded to be sufficient in form and substance, was duly executed and tendered to appellant, as mayor, for his approval, such bonds being subject to his approval by § 31 of art. 8, of the city charter. Appellant refused to approve the bond upon the sole ground that, "no legal or sufficient ordinance has been passed by the city of Seattle, as required under the charter and the laws of the state of Washington, to constitute a valid proceeding authorizing said improvement," as stated in writing by him, in which writing he admits that the bond is in all respects sufficient were there a valid ordinance providing for the construction of the improvement.

The principal contention made by counsel for appellant is that the ordinance is not a valid existing ordinance because it was not passed over the mayor's veto by the unanimous vote of the council. The argument rests upon the assumption that the initiation of this improvement proceeding was wholly by the council, and not by petition of the owners of the property to be benefited, in which event "such improvement shall not be ordered except by ordinance passed by the affirmative vote of two-thirds of all the members of the city council, at a regular meeting, or at a meeting which is an adjournment of a regular meeting; Provided, no street shall be ordered graded without petition, except by unanimous vote of all members present." Charter of the City of Seattle, art. 8, § 11. We shall assume that there was no property owner's petition for this improvement. Section 16, of art. 4, of the city charter, touching the veto power of the mayor and the power of the council to pass an ordinance over the mayor's veto, so far as necessary to be here noticed, reads:

"Every bill which shall have passed and been authenticated as provided in the last section shall within five days thereafter be presented to the mayor. The mayor shall return

such bill to the council within ten days after receiving it, and if he do not disapprove it, it shall become an ordinance; if he disapprove it, he shall, when he so returns it, specify his objections thereto in writing. The objections of the mayor shall be entered at large on the journal of the council, and published in the city official newspaper. The council shall, not less than five days after such publication, and within thirty days after such bill shall have been so returned, reconsider and vote upon the same, and if the same shall, upon such reconsideration, be again passed by the affirmative vote of not less than two-thirds of all the members elected, the president of the council shall certify the fact on the bill, and when so certified the bill shall become an ordinance with like effect as if it had not been disapproved by the mayor . . ."

Now it is plain from this charter provision that if the ordinance here involved were one requiring only a majority affirmative vote to pass it, without being subject to any other conditions, it could be passed over the mayor's veto by an affirmative vote of "two-thirds of all the members;" that is, by an affirmative vote of six of the nine members. It also seems plain that this charter provision does not, within itself, suggest any exception where there might be required an affirmative vote of more than two-thirds of all the members to pass an ordinance over the mayor's veto. Counsel argue that such an exception is presented in this case because the ordinance is one which requires for its passage an affirmative vote of at least two-thirds of all the members of the council, and also a unanimous vote of all members of the council present at the time of its original passage. This argument, we think, loses its force when it is remembered that the ordinance could have been passed by an affirmative vote of six members of the council, providing there had been only six members present at the time of its passage, because that would have been "by unanimous vote of all members present," and also an affirmative vote of "two-thirds of all the members." Therefore, the original passage of such an ordinance does not necessarily call for more votes than to pass it over

the mayor's veto, as counsel for appellant seem to argue would be the result by holding that an affirmative vote of only two-thirds of the members is sufficient to override the mayor's veto.

Now the plain words of the charter, in so far as it relates to the veto power of the mayor and the power of the council to override such veto, are, "if the same (ordinance) shall upon such reconsideration, be again passed by the *affirmative vote of not less than two-thirds of all the members elected*, the president of the council shall certify the fact on the bill, and when so certified *the bill shall become an ordinance with like effect as if it had not been disapproved by the mayor*." The italics are ours. These words seem to leave no room for construction. We are satisfied, in any event, that the reasons advanced by counsel for appellant are not sufficient to warrant our giving them any other than their literal meaning. We think they mean the same with reference to this ordinance as with reference to an ordinance which could be passed originally by an affirmative majority vote of the council. No decisions of the courts have come to our notice furnishing any material aid here. The decisions in *Hall v. Racine*, 81 Wis. 72, 50 N. W. 1094, and *State ex rel. Main v. Crounse*, 36 Neb. 835, 55 N. W. 246, 20 L. R. A. 265, are of some interest in this connection, though they deal with the power of veto where the original passage of an act or ordinance requires more votes than does the overriding of the executive veto. These decisions voice somewhat different views upon that subject. We have assumed that the power of veto exists in the mayor as to the ordinance here involved, but conclude that the ordinance became effective by the affirmative vote of eight members of the council upon the reconsideration.

Some contention is made by counsel for appellant that the ordinance is invalid because it fails to properly specify the proportion of the cost of the improvement to be assessed

against the property of the added portion of the "enlarged district" referred to therein, which enlarged district was evidently provided for in a resolution therefor. Section 14, p. 448, Laws 1911, being the general local improvement law, provides as follows:

"Whenever any local improvement shall be of such nature and character that the special benefits resulting therefrom extend beyond the boundaries of the local improvement district hereinbefore described and defined, the council may create an enlarged district, which shall include as near as may be all the property specially benefited by such improvement. In such case, the petition or resolution initiating such improvement shall state that it is proposed to create an enlarged district to pay the whole or a portion of the cost and expense of such improvement and shall specify and describe the boundaries of such enlarged district, and shall specify a fixed amount of the cost and expense of such improvement to be assessed against that portion of the property within such enlarged district . . ." 3 Rem. & Bal. Code, § 7892-14.

This provision, we think, renders it plain that a statement of the proportion of the cost to be charged to the added property of the "enlarged district" need not be in the final ordinance providing for the improvement, but is a matter to be stated in the resolution. The ordinance, we think, is not invalid because of want of proper statement therein on that subject.

It is insisted that the courts should not control the discretion of the mayor touching the matter of approval of bonds of this nature. Counsel seem to assume that to sustain this judgment would be to interfere with the mayor's discretion. We do not think such is the case, in view of appellant's admissions as to the sufficiency of the bond here involved, and his refusal to approve it solely because of the claimed invalidity of this ordinance. There is no question of discretion here involved, but rather a pure question of law, arising upon conceded facts. Mandamus is an appropriate remedy to

compel an inferior officer to perform a plain ministerial duty. Under the conceded facts, appellant's duty became simply ministerial.

The judgment is affirmed.

MORRIS, C. J., CHADWICK, MOUNT, HOLCOMB, FULLERTON, ELLIS, and MAIN, JJ., concur.