GILES, City Controller, v. CITY OF HOUSTON et al.

No. 9818.

Court of Civil Appeals of Texas. Galveston.

Feb. 22, 1933.

Rehearing Denied March 23, 1933.

Painter, Alpha & Painter, of Houston, for appellant.

Sam Neathery, Wm. D. Orem, L. W. Cutrer, and Geo. D. Neal, all of Houston, for appellees.

**GRAVES, Justice.**

This appeal is from a judgment in mandamus, on an application of the appellees as mayor and commissioners of the city of Houston, requiring the appellant as controller of the city—as in compliance with article II, section 19, of the charter of that city—to countersign a contract otherwise duly made between the city and the Municipal Street Sign Company, Inc., for the furnishing and delivering by the latter to the former of 1250 Type 4-X street name plates or signs; all matters of fact as well as of law had been submitted to the court for determination without a jury, and, on rendering its decree, the court incorporated these findings of fact and law:

"The Court being of the opinion that the facts and the law are with the Relators, finds as follows:

"(1) The Court finds that the Controller's duties with reference to the countersigning of contracts proffered to him for his signature after being first entered into by the City Council are discretionary and not merely ministerial.

"(2) The Court finds that in the instant case the contract tendered to the Controller was tendered after all the preliminary requirements of the City Charter with reference to the making of the contract were complied with, either literally or substantially; that the contract tendered was to be paid for out of funds derived from the sale of bonds voted for permanent street improvements, and that the street signs in question were, according to the undisputed evidence, of a permanent character, both in composition and in the proposed manner of construction at street intersections.

"(3) The Court further finds that the contract was legal, and having been duly tendered to the Controller after all the necessary legal steps had been taken, the action of the Controller in failing and refusing to countersign the same is unwarranted by law.

"(4) In view of the above enumerated facts and conclusions, the Court therefore concludes that the mandamus sought should be granted."

In this court appellant, as he did below in his capacity as respondent, assails this determination upon the contention that under the provisions of the city charter his duties were discretionary rather than ministerial to the extent that, when he had first, in good faith and prompted by his best judgment, exercised his authority by refusing to sign this contract in the bona fide belief that it was not a legal one, because the requirements of the city charter had not been complied with in its making, and because there was no authority under its provisions for appropriating street improvement bond funds in payment for metal street signs, as this contract undertook to do, that the court was without power to thus in this order compel him to officially exercise the court's discretion instead of his own; that in this instance he had previously refused, and still did refuse, to sign the contract involved in such honest exercise of what he so determined to be his mandatory duty under judicial and discretionary authority invested in him by the city charter.

■ This court approves the holding of the trial court, and affirms its judgment; in so doing, it seems to us that no more clearly concise statement of the extent to which the official discretion of an officer may be controlled by the courts has been made than this one by our Supreme Court in Houston & G. N. Railway Company v. Kuechler, Commissioner, 36 Tex. 382: "It is said that an officer cannot be compelled by a mandamus to do any act involving an exercise of official discretion. This is very true, when properly understood. It means that an officer cannot be compelled by mandamus to do anything which the law gives him a discretion not to do. It does not mean that the writ will not issue to compel an officer to do any act the performance of which requires an exercise of mind or judgment."

■ Another brief and equally applicable pronouncement as to how the question of legality in such a situation is to be determined—that is, whether by the opinion of the officer himself or by the courts of the jurisdiction—is thus made by the Supreme Court of Kansas in State of Kansas v. Board of Commissioners, 113 Kan. 203, 213 P. 1062:

"Under a statute requiring a county attorney to indorse his approval upon a contract entered into by the county commissioners if he finds it to be valid, the question of its validity being one of law, he may be required by mandamus to make such indorsement if the court determines it to be his duty, notwithstanding his own judgment to the contrary."

In this instance none of the quoted findings —in so far as susceptible of being stated as facts—are shown to be without ample basis in the evidence, which indeed is full and satisfactory in support of them all; the claim in that respect therefore amounts, simply, to appellant's conclusion—concededly and indisputably acted upon conscientiously as if in public duty bound—that the charter and contract involved had been violated and were illegal, mainly, because:

(1) The strict and literal requirements of its provisions—such as that no specifications for the improvement had been approved by the council; that lump sum bids are called for without specifications of quantities; that specifications had been filed in the business manager's office rather than that of the mayor; and that the supporting appropriation

ordinance passed did not specify "that the money required for such contract is in the treasury" etc.;

(2) That the charter definition of "street improvements" as contained in article IVa, section 1, is exclusive and mandatorily binding upon the city council and does not include metal street signs such as this contract calls for, hence its attempt to appropriate street improvement bond funds in payment therefor is illegal and void;

(3) That article 8, section 3, of the charter respecting the duty of the controller, reading: "He shall not sign any contract nor make or execute any warrant or order for the payment of any sum of money unless the same be legal, and all prerequisites and requirements shall have been complied with, nor until after an appropriation has been duly and legally made therefor"—

vested him with a discretion not to sign a contract that in his opinion was illegal because not in compliance with these specified requirements.

■ The trial court was not in error, we conclude, in overruling all of these contentions. In addition to the two well-established legal principles already quoted from the authorities cited supra, it seems equally as well settled that such a substantial compliance with the provisions of the charter found on the facts to have been had in this instance was all that is necessary to the making of a legal and binding contract on the part of the city of Houston. Texas Transportation Co. v. Boyd, 67 Tex. at page 158, 2 S. W. 364; Scanlan v. Gulf Co. (Tex. Com. App.) 44 S.W.(2d) 967, 80 A. L. R. 852.

Not only so, but further, the trial court having likewise found on the facts that these metal street signs called for would in every respect constitute permanent street improvements, they seem to be as such clearly authorized by these broad and comprehensive provisions contained in articles 2, section 2, subsection (b), and IVa, section 1:

Article 2, section 2, subsection (b): "The City shall have all powers that are or hereafter may be granted to municipalities by the Constitution or laws of Texas; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this Charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the Council.

"In addition to all the powers enumerated in this Charter, implied thereby or appropriate to the exercise thereof, the city shall have and may exercise, in the manner hereinbefore provided, all other powers which, under the Constitution and laws of this State, it would have been competent for this Charter specifically to enumerate."

Article IVa, section 1: "The term 'Improvements' as embraced in this article shall include the improvement of any street, avenue, alley, highway, public place or square or boulevard, or any portion thereof, within the city, by filling, grading, raising or paving or repaving the same with any permanent and durable materials, or by the construction, reconstruction or repair of curbs and gutters, and shall also include the laying out, opening, widening, narrowing, straightening or otherwise establishing, defining or locating any street, avenue, alley, square, public place or sidewalk."

■ If, however, there could be any doubt about the sufficiency of the quoted charter provisions, then it seems plain, not only that the city—being a Home Rule one—was entitled to rely upon the grant of authority contained in Vernon's Ann. Civ. St. art. 1105b, by virtue of having thus in advance in article 2, section 2, subsection (b), of its charter, adopted and brought itself under the provisions of this general state statute, but also that the power vouchsafed to it as such by that general state statute clearly authorized it to both make this contract and to pay the bill thereby incurred for such street signs out of its street improvement bond funds. Denton v. Ice Co., 119 Tex. 193, 27 S.W.(2d) 119, 68 A. L. R. 866.

In Smith Bros. v. Lucas (Tex. Civ. App.) 15 S.W.(2d) 27, cited and relied upon by appellant, a decidedly different legislative act was construed, so that holding is inapplicable and does not militate against the authoritative determination of the question here presented in the City of Denton Case, supra, upon the legal equivalent of the same state of fact as obtains in this.

Further discussion is deemed unnecessary, since these conclusions require the affirmance indicated; it has been so ordered.

Affirmed.