208 P.2d 833

**BOARD OF REGENTS OF UNIVERSITY AND STATE COLLEGES v. FROHMILLER.**

**No. 5229.**

Supreme Court of Arizona.

Aug. 1, 1949.

Claude H. Brown and John D. Lyons, Jr., of Tucson, Arizona, for petitioner.

Fred O. Wilson, Attorney General and Perry M. Ling, Chief Assistant Attorney General, for respondent.

LA PRADE, Chief Justice.

Upon petition of the Board of Regents of the University and State Colleges of Arizona, an alternative writ of mandamus was issued by this court directed to Ana Frohmiller as State auditor, commanding her to issue warrants in payment of seventeen claims which petitioner had caused to be filed with respondent. Thirteen of the claims were against funds of the University, and four were against funds of the Arizona State College at Tempe. Claim No. 1 was for the cost of advertising for bids for construction of dormitories authorized by Chapter 65, Arizona Session Laws of 1945, which bids were rejected. Claims Nos. 2 and 3 were for bronze tablets permanently affixed to dormitories stating the name of the building, date of construction, members of the board, the architect, etc. Claims 4 to 13, inclusive, were for expenses incurred in the inauguration of a new president at the university; specifically, they were for rental of caps and gowns (bachelor's master's, doctor's) for delegates, luncheon and reception, pictures of the inauguration and the new president, programs, direction signs for guidance of visitors, announcements, invitations, information folders, and public address system. The four claims against the funds of the Arizona State

College at Tempe were in payment of chinaware, crystal, silverware, dining room suite, china cabinet, and dining room rug, to be used in connection with the Home Economics Department of the College, where students are given practice instruction in home management. All of the claims were presented and rejected twice. After the second rejection they were all presented to the governor, who rejected the first claim against the university funds (to pay for advertising for bids for construction); approved the second and third claims against the University funds (for bronze tablets to be affixed to buildings); rejected all the other claims (inauguration expenses against the University funds); and approved all the claims against the State College funds.

In response to the writ respondent moved to dismiss the petition for the writ on the ground (1) that the facts stated in the petition showed no grounds for relief, and (2) that the court lacked jurisdiction over the subject matter. In discussing the motion respondent contended that (a) the board of regents is not a party beneficially interested and therefore may not prosecute this action; (b) the board of regents does not show a clear legal right to the relief demanded; and (c) the real parties in interest (creditors) have a plain, speedy, and adequate remedy at law.

■ The contention that the board of regents is not a party so beneficially interested as to be able to maintain this action is without merit. In Barry v. Phoenix Union High School, 1948, 67 Ariz. 384, 197 P.2d 533, 535, we held that a high school district could prosecute mandamus proceeding against a county school superintendent to compel the issuance of a warrant upon the county treasurer against the school district funds for payment of school equipment, and that the school district was a "party beneficially interested" within the meaning of section 28-201, A.C.A.1939, reading in part "The writ of mandamus may be issued by the supreme or superior court on the verified complaint of the party beneficially interested, * * *." In this case we pointed out that the board of education of a school district was "vitally concerned in seeing that its vouchers were honored by respondent in order that its financial integrity might be maintained and its manifold duties discharged." The foregoing holding and the reasons therefor are especially applicable to the board of regents. in its management of the University and the two State Colleges. The importance of its business integrity and credit is sufficient in and of itself to make it a "party beneficially interested." That the remedy was available to the creditors does. not preclude its use by the petitioner. Barry v. Phoenix Union High School,. supra.

■ We are not unmindful of the general rule that mandamus lies only to compel an officer to perform a duty con-

cerning which he has no discretion, and which he has refused to perfom. Where there are no disclosures or controverted facts calling for the exercise of discretion, discretion ceases to exist as an element of the action and then the only question is the application of the law, which the court may always give and direct. The board should and must have access to the extraordinary remedy of mandamus when it is necessary to secure its aid in carrying out duties, in which attempt it is being thwarted because some official refuses to perform a corresponding duty specifically imposed by law. Industrial Commission v. Arizona State Highway Commission, 40 Ariz. 163, 170, 10 P.2d 1046.

■ The issuing of the warrants was not discretionary with the auditor. If all the necessary fact predicates existed for the issuance of the warrants, including a "public purpose," then the warrants must issue as a matter of right. In Proctor v. Hunt, 43 Ariz. 198, 29 P.2d 1058, 1060, we stated that if a claim is "on its face, *for a public purpose* and is properly itemized and accompanied by vouchers, and an appropriation has been made by law for that purpose, it is the mandatory duty of the auditor to approve said claim and to issue a warrant therefor; *no discretion being given, if the matters recited beforehand appear in the claim as presented.*" (Emphasis supplied.) It was the auditor's right to determine whether the expenditures presented by the claims were for a public purpose. In making this determination she exercised her judgment. But in so doing she exercised no discretion in the sense in which that word is used when coercive action by mandamus is resisted. She had no discretion to exercise in determining what were the facts, because the facts were not in dispute. If the facts showed a legal right to the warrants, discretion on the part of the auditor ceased to exist and the duty was enjoined. To successfully resist the writ, her determination must have been correct. If she was honestly of the opinion that the expenditures represented by the claims were for an illegal purpose she rightfully refused to issue the warrants and in so doing is not subject to criticism for being cautious. On mandamus the court determines the question of public purpose. If in accord with the auditor's views it sustains her; if adverse she is coerced. State ex rel. Village of Chisholm v. Trask, 155. Minn. 213, 193 N.W. 121, citing cases; Ferris (1926) Extraordinary Legal Remedies, section 210; Cates v. Knapp, 104 Kan. 184, 178 P. 447; City of Burlington ex rel. Board of School Com'rs v. Mayor of City of Burlington, 98 Vt. 388, 127 A. 892, 893, 899; State of Arizona v. Angle, 56 Ariz. 46, 53, 104 P.2d 172; State ex rel. LaPrade v. Cox, 43 Ariz. 174, 30 P.2d 825; Campbell et al. v. Flying V Cattle Co., 25 Ariz. 577, 220 P. 417; Arizona Corp. Commission v. Heralds of Liberty, 17 Ariz. 462, 154 P. 202.

The case of State ex rel. Griffith, Atty. Gen. v. Board of Commissioners of Linn County et al., 113 Kan. 203, 213 P. 1062, 1063, involved the question of the duty of a county attorney to approve a bridge contract under the Kansas Statute, Laws 1917, c. 80, § 18, which provided: "That it is hereby made the duty of the county attorney to personally examine as to form, the advertisement, proposal, contract, plans, specifications, bond and the minutes of the board's meeting for each bridge or culvert proposed to be built or repaired by contract, to determine whether the contract has been awarded in strict compliance with this act; and no contract shall be legal and binding on the county until said contract is signed by the chairman of the board of county commissioners, by order of said board at a legal meeting thereof, and approved by the county attorney by his signature indorsed thereon."

The county attorney sought to avoid the approval of the contract upon the ground that, in his opinion, the bridge laws had not been complied with. The Supreme Court of Kansas held:

"The occupant of the office of county attorney at the time the contracts were executed did not believe that the bridge laws had been complied with, and made an indorsement upon each to that effect. The defendants urge that it was incumbent upon the officer to act upon his own judgment, and that his action cannot be controlled by mandamus, and that in any event the present county attorney has no duty to perform in the matter. The obvious intention of the statute is that the county attorney shall pass upon the legality of the proceedings involved, and not upon any question of business expediency. *Where, as here, the problem is one of applying the law to established facts, an officer who must in the first instance pass upon the question may be required to take another course where the court reaches a different conclusion upon the legal issue. For illustration, mandamus will lie to require the auditor of state to allow a claim in spite of his prior disapproval, where it was based upon what is found to be a mistaken view of the law.* (Emphasis supplied.)

" 'Where they (the defendants in mandamus) seek to justify nonaction on their part solely by a reason which is founded upon a doubtful conception of their legal obligations—where the controversy grows out of a dispute over a pure question of law, an authoritative answer to which will necessarily end the matter—the practice in this state is to permit the issue to be determined in mandamus. * * *' Eberhardt Construction Co. v. Board of Comr's of Sedgwick County, 100 Kan. 394, 396, 164 P. 281, 282."

The doctrine of this Kansas case was upheld in Giles, State Comptroller v. City of Houston, et al., Tex.Civ.App.1933, 59 S. W.2d 208. Also see Johnson et al. v. Arnold, Mayor, 176 Ga. 910, 169 S.E. 505.

In State ex rel. Independent Asphalt Pav. Co. v. Gill, 87 Wash. 201, 151 P. 498, 499, the mayor of the city of Seattle refused to approve a bond given to the city to secure the faithful performance of a local street improvement contract upon the sole ground that "no legal or sufficient ordinance has been passed by the city of Seattle, as required under the charter and the laws of the state of Washington, to constitute a valid proceeding authorizing said improvement." The Supreme Court of the state of Washington held: "It is insisted that the courts should not control the discretion of the mayor touching the matter of approval of bonds of this nature. Counsel seem to assume that to sustain this judgment would be to interfere with the mayor's discretion. We do not think such is the case, in view of appellant's admissions as to the sufficiency of the bond here involved, and his refusal to approve it solely because of the claimed invalidity of this ordinance. *There is no question of discretion here involved, but rather a pure question of law, arising upon conceded facts. Mandamus is an appropriate remedy to compel an inferior officer to perform a plain ministerial duty. Under the conceded facts appellant's duty became simply ministerial.* * * *" (Emphasis Supplied.)

In our own case of Hutchins v. Frohmiler, 55 Ariz. 522, 103 P.2d 956, 959, the necessary steps were delineated that must be followed before the coercive writ will issue against the auditor. It was pointed out that among the preliminary steps it must be made to appear that both the governor and the auditor have had an opportunity to exercise their independent judgment on any claims presented, and that "when thus presented, rejected by both the auditor and the governor, a proceeding of this nature (mandamus) would properly raise the issue of whether, as a matter of fact and law, they were for a public purpose and authorized by law." And in Maricopa County Municipal Water Conservation Dist. No. 1 v. LaPrade, 45 Ariz. 61, 40 P.2d 94, 97, it was said: "* * * And if it appear in the proceeding that there is only one legal way he can act on an admitted state of facts, it would seem that he no longer has any discretion, that his duty, although discretionary if the facts are in dispute, becomes ministerial only, and that logically there is no reason why mandamus should not lie to compel him not only to act, but to act in the only manner which the law permits."

It would thus seem that the practice in this state is to permit the issue of "public purpose" to be determined in mandamus.

Respondent by way of justification of her refusal to issue warrants for the claims asserts that by the provisions of section 10-930, A.C.A.1939, Supp., she was and is precluded from issuing warrants in payment of Claims 1, 2, and 3 of the University and the four claims of the State College for the reason that during the delay occasioned by their rejection (twice),

transmittal to the governor, and return, warrants could not be issued in the month following the fiscal year in which the indebtednesses were incurred. All of the claims were *seasonably* presented to the auditor. Respondent now makes no claim of illegality as to these seven claims. Her present contention is that she may not legally issue a warrant to pay a claim for an indebtedness incurred in a previous fiscal year unless such payment is made (warrant issued) not later than July 30th of the succeeding fiscal year.

For similar reason respondent claims that she was and is without authority to issue warrants for the claims representing expenditures of the inauguration, and for the additional reason that these claims show on their face that such expenses were not for a public purpose.

■■■■■■ At the outset we feel that it is advisable to decide whether the expenditures in connection with the inauguration ceremony were for a public purpose. What is "a public purpose" depends in part upon the time (age), place, objects to be obtained, modus operandi, economics involved, and countless other attendant circumstances. The phrase is incapable of fixed definition; examples bring more elucidation. See City of Tombstone v. Macia, 30 Ariz. 218, 219, 245 P. 677, 46 A. L.R. 828; Frohmiller v. Board of Regents, 1946, 64 Ariz. 362, 171 P.2d 356; City of Glendale v. White, 1948, 67 Ariz. 231, 194 P.2d 435. One of the attendant circumstances referred to has its seat in the human equation—the eyes, conscience, and philosophy of those called upon to judge. With these thoughts in mind we are moved to observe that in determining whether expenses incurred as an incident to the inauguration of a new president of the University are of a kind authorized by law it should be considered what the event is of inducting into office a new president, the purpose to be served by such a ceremony, and the practice observed by similar institutions with regard to a like event. The custom in other seats of learning need not at all set the pattern for ours, nor should we justify a formal and ceremonious inauguration of a president of the University upon the ground that this is what is done at Harvard or at Yale; but any general acceptance of the custom, country-wide in extent, must indicate some useful, and not merely an idle, purpose. By common knowledge the custom is generally followed, and is Arizona in the few inductions of a president of the University before the inauguration of Dr. Byron McCormick ceremonies of the same general nature were held, with incident expenses, and with no official objection that a public purpose was not served. Ceremony, it is true, is not a necessity; a new president could be seated with no more ceremony than attends the swearing in of a constable, but this overlooks the nature of an institution of higher learning, the character and needs of a large body of undergraduates and their professors; the loyalties inspired in

them by their university; the value of ritual and symbolism in developing those loyalties in formative minds; the calling of attention to the unity of all the colleges and schools of the University and the centering of control of a vast educational plant with its multitude of diverse interests and aspirations in the president. The dignity of the office is enhanced by such ceremonies. A failure to avail the University of the opportunity to signalize the importance of this event in its life when the reins of control are transferred to a new president might more readily subject the board to a charge of laxity and indifference to the psychological values inherent in the occasion than with extravagance for providing for a ceremonious celebration of so important an event. We have no hesitancy in holding that reassonable expenditures for the purposes exhibited by these claims fall in the category of expenditures for a "public purpose." No claim of unreasonableness has been made. The expenses were in the field of discretion vested in the board.

On this matter of discretion petitioner asserts that no discretion is vested in the state auditor over the expediency or legality of any expenditures made by the board of regents from funds under its supervision, and hence the auditor should not have questioned the expenses incident to the inauguration and should have promptly issued the warrants. This position cannot be maintained. We thought that had been made clear after many de-

cisions, Fairfield v. W. J. Corbett Hardware Co., 25 Ariz. 199, 215 P. 510; Proctor v. Hunt, 43 Ariz. 198, 29 P.2d 1058; State v. Miser, 50 Ariz. 244, 72 P.2d 408; Ward v. Frohmiller, 55 Ariz. 202, 100 P.2d 167; Hutchins v. Frohmiller, 55 Ariz. 522, 103 P.2d 956; Frohmiller v. Board of Regents, 1946, 64 Ariz. 362, 171 P.2d 356, interpreting the applicable constitutional and statutory provisions that the auditor shall audit, adjust, and settle all claims (Exceptions see section 4-302, A.C.A.1939) and investigate them to determine whether "all or any portion of any claim is not for an actual public purpose * * *." (Id.) If such an investigation discloses no actual public purpose the auditor shall refuse to draw a warrant and shall return the claim to the office where it originated with her reasons for rejection. If it is refiled she shall again investigate it and if no "public purpose" is manifest she shall "again reject the claim, and report the fact of such rejection to the governor, and no warrant shall be drawn thereon, unless the governor specifically approves the claim in whole or in part." (Id.) If the governor overrides the auditor "the action of the auditor would then become ministerial and subject to compulsion by mandamus. Ward v. Frohmiller, supra." Hutchins v. Frohmiller, supra. The statute contemplates that the governor may sustain the auditor and reject the claim in which event there would be no discretion or duty in the auditor to issue a warrant. If a review by mandamus is sought on a claim rejected by both the

auditor and governor, then the writ would have to be directed against both of these officers. See Hutchins v. Frohmiller, supra, specifically 55 Ariz. at page 528, 103 P.2d 956.

The necessity, expediency, advisability, or policy actuating the creation of the debt is no official concern of the auditor. (Cases supra) It would seem that the desire of the board of regents to be an autonomous body, freed of all shackles, was given impetus by our recent decision in Hernandez v. Frohmiller, 1949, 68 Ariz. 242, 204 P.2d 854, 860, wherein the constitutionality of the state civil service law was under consideration. In passing the court made the observation that since the University and State Colleges were under the supervision of the board of regents by constitutional grant "to permit legislation to throw the employment and supervision of all personnel under the civil service law, except the teaching staff, would necessarily deprive the board of regents of a large portion of its constitutional supervisory power. We have no hesitation in holding that such legislation runs counter to said article 11, section 2, Arizona Constitution."

The board argues that legislation permitting the auditor to question claims arising out of its contractual authority is contrary to constitutional provisions vesting in the board the general conduct and supervision of the University and State Colleges, citing Arizona Constitution, article 11, sections 1, 2, 3, 4, and 5. We do not believe

it is or was intended that this grant of power carried with it the power, authority, or privilege to spend the state's monies at will and with no review.

"\* \* \* The fact that the university is incorporated does not make it any the less an arm, branch or agency of the state for educational purposes, and affects in no particular the power of the legislature over it.

\* \* \* \* \* \*

"The fact that 'within the scope of its duties' the board of regents 'is supreme,' Fairfield v. J. W. Corbett Hardware Co., supra, does not, as appellee argues, relieve the auditor from the duty of approving the claims of university employees for wages or the governor from countersigning the warrants in payment thereof, any more than it relieves these officers from performing this same duty when the claims and warrants of other state employees are involved. It is the duty of the auditor before issuing a warrant in payment of a claim, including those approved by university authorities, to know that the claim is for services falling within the purpose of the appropriation against which the warrant is to be charged, and if it is not, disapprove it." State v. Miser, 50 Ariz. 244, 72 P.2d 408, 412.

It might have been added that not only is it the duty of the auditor to know that the claim falls within the purpose of the appropriation against which the warrant is to be charged, but also that the

declared legislative purpose of the appropriation is actually for a "public purpose," and if the claim is not for a public purpose to disapprove it regardless of the fact that it is within the declared legislative purpose. Paramount to the right of review vested in the auditor is the ultimate right of the Supreme Court of Arizona to decide whether any claim is for a public purpose.

We shall now consider that portion of defendant's response wherein the proposition is set up that "No payments for debts incurred in any fiscal year may be made more than one month after the close of such fiscal year from funds appropriated for that year." Respondent relies upon section 10-930, A.C.A.1939, supplement, which reads as follows: *"Lapsing appropriations.*—No officer or other agency of the state shall, after the close of any fiscal year, incur or order or approve the incurring of any obligation or expenditure under any appropriation made by the legislature for such fiscal year, and no expenditure shall be made from or be charged to any appropriation made by the legislature for any fiscal year that shall have expired at the time the obligation for such expenditure was incurred. *The state auditor is authorized to draw warrants* against the available balances of appropriations made for a fiscal year, for a period of one (1) month *after the close of such fiscal year, for the payment of obligations incurred during the fiscal year for which such appropriations were made or in ful-fillment of contracts properly made during such year and for no other purpose whatsoever, provided that such goods were received or services rendered prior to the close of such fiscal year. After the expiration of such period of one (1) month from the beginning of each fiscal year, all balances of appropriations for the prior fiscal year shall lapse and no further payments shall be made on any claim on account of expenditures of such prior fiscal year.* Appropriations for construction or other permanent improvements shall not lapse until the purpose for which the appropriation was made shall have been accomplished or abandoned unless such appropriation has stood during the entire fiscal biennium without an expenditure therefrom or encumbrance thereon. *Nothing in this section shall be construed to require the revertment to the general fund* of any balance derived wholly or partly from federal grants, earnings or other sources, and remaining in any special revenue, endowment, interest, redemption, or suspense agency fund at the close of the fiscal year unless expressly so provided by law, nor to require the revertment to the general fund of *any balance of fiscal year or biennium appropriations made for the University of Arizona."* (Emphasis supplied.)

This section unequivocably provides:

(a) that the goods or services for which a claim is made must have been received or rendered prior to the close of the fiscal year;

(b) that warrants may be drawn for a period of one month after the close of the fiscal year for goods or services received or rendered prior to the close of the fiscal year "and for no other purpose whatsoever";

(c) *that after the expiration of such period of one month from the beginning of each fiscal year no payments shall be made on any claim on account of expenditures of such prior fiscal year;*

(d) that after the expiration of such month all balances of appropriations for the prior fiscal year lapse;

(e) that all balances to the credit of the University do *not* lapse.

Petitioner argues that balances to the credit of the two State Colleges likewise do not lapse, by virtue of Laws of 1945, chapter 80, section 4, page 194, now appearing as section 54-1602c, A.C.A.1939, Supp. This section merely conferred upon the board of regents the jurisdiction, authority, and duties theretofore vested in the separate boards of education of the two State Colleges. We hold that the immunity referred to does not extend to the funds of the two State Colleges. Petitioner also insists that since the balances of the University do not lapse, warrants are not required to be issued within the thirty-day period next succeeding the close of the fiscal year within which the expenditure was made, "otherwise the University would not have the benefit of the appropriations, which are not to revert, for the purpose

intended by the board of regents." We do not believe that this conclusion reasonably follows. Those balances that do not revert are available for expenditure in the next fiscal year but of course not available to pay for expenditures made in the previous fiscal year.

In this connection it must be recognized that the state is on a budget basis. See Budget and Financial Administration Act, 1943, sections 10-901 et seq. A.C.A.1939, Supp. By the provisions of section 10-920, it is provided: "*Obligations to be evidenced by encumbrance documents.*—Encumbrance documents shall be issued by the budget units to cover all obligations, actual or anticipated. Copies of these documents shall be submitted forthwith to the office of the state auditor, and shall proceed through complete pre-audit and posting operations setting aside the amount of the encumbrance to be used exclusively for the payment of the claim when presented."

The receipt of encumbrance documents enables the auditor to maintain a continuous internal audit of the financial transactions of the state and its budget units. Section 10-933.

The filing and posting of an encumbrance document has the effect of immediately reducing the book balance of the budget unit by the amount of the obligation, actual or anticipated, as shown on the face of the encumbrance. . The provisions of this section, requiring encumbrance documents, together with the provisions of section 10-

930, supra, relating to the necessity of presenting claims within the fiscal year or before July 31st were adopted for the express purpose of making it possible to determine at all times the financial condition of the state. To implement these provisions it was provided that all appropriations should lapse at the end of one month after the fiscal year. The necessity for encumbrance documents, and claims was dictated by experience—the advisability of preventing departments of the state from using current funds to pay bills incurred in the previous fiscal year.

█ We do not believe that the legislature intended that the proviso (section 10-930, supra) that after the expiration of one month from the beginning of each fiscal year no payments by way of warrants shall be made on account of expenditures of the prior fiscal year should have any application to the payment of bills predicated on seasonably filed encumbrance documents (before June 30th) and supported by timely filed claims (before July 31st). This section does not specifically provide that amounts set aside, on account of encumbrances, to be available to pay claims when presented, shall lapse after the expiration of one month after the close of the fiscal year. To so hold would make is impossible for the auditor to issue a warrant on a claim that had been approved by the governor over her rejection if the approval and order of the governor were *not* made *and* the warrant issued within the one month

period after the close of the fiscal year. After the expiration of the period of one month it would likewise be useless to seek the remedy of mandamus to enforce the issuance of warrants on claims unlawfully rejected by both the auditor and governor. A suit at law would be the only remedy, and any resulting judgment for the claimant could not be paid by the auditor. All such creditors would have to appeal to the legislature for relief—a circuitous and wholly inadequate remedy.

█ To hold that legally executed encumbrances and supporting claims, timely presented, have the effect of withdrawing so much of appropriations, or balances applicable to such claims, from the provisions of section 10-930 relating to the revertment of balances, would not disrupt the state's bookkeeping setup, and would be within the legislative purview of keeping budget units of the state within the appropriation for their support. By creating a suspense account the auditor could preserve balances from which such claims could be paid when it had been finally determined that they should be paid. When such a determination had been made such claims would be paid from funds appropriated and budgeted for that purpose, and would not be paid from the appropriated funds for a succeeding fiscal year.

█ We pointed out above that the governor was a necessary party to this proceeding in that the auditor could not issue a warrant on a claim rejected by the

governor, yet no good would be accomplished by now dismissing this proceeding on this ground. To discharge the writ now operative with the necessary effect of remitting the petitioner to another proceeding, which, so far as the present record shows must end in the same result, would be super-technical and wholly unrealistic. Van Dyke v. Superior Court, 24 Ariz. 508, 211 P. 576, 588; Johnson v. Superior Court, 68 Ariz. 68, 199 P.2d 827, 831.

We therefore conclude that all of the claims involved herein represented expenditures made for a legal purpose and were timely presented, and that the encumbered balances applicable to pay these claims did not lapse and revert to the general fund and were and now are available for their payment.

No legal excuse appearing for the non-issuance of the warrants, the alternative writ heretofore issued is made peremptory.

UDALL, J., and KELLY, Superior Court Judge, concur.

Justice EVO DECONCINI having disqualified himself, Superior Court Judge HENRY C. KELLY of Yuma County, was called to sit in his stead.

STANFORD, J., not participating due to illness.

PHELPS, Justice (dissenting).

I am sorry to dissent from the majority opinion in this case but feel constrained to do so upon the ground that mandamus does not lie in this case.

Section 28-201, A.C.A.1939, provides in so far as we are here concerned that: "The writ of mandamus may be issued by the supreme or superior court on the verified complaint of the party beneficially interested, to any inferior tribunal, corporation, board, * * *, or person, to compel the performance of an act which the law specially imposes as a duty resulting from an office, trust or station, * * *."

While the creditors are the parties primarily interested, I do not question the existence of a sufficient beneficial interest in the board of regents to enable it to maintain the action of mandamus where it is a proper remedy. Barry v. Phoenix Union High School Dist., 67 Ariz. 384, 197 P.2d 533. It is the right to invoke its aid in this character of case that I question.

Mandamus may be used to compel an officer to perform an act only when the law makes the performance of the act the officer's duty. Riley v. Cornwall, 48 Ariz. 10, 58 P.2d 749. However, only ministerial, not discretionary, acts of officers may be compelled by mandamus, Ackerman v. Houston, 45 Ariz. 293, 43 P.2d 194. The authorities are all in accord on the above proposition.

Section 4-302, A.C.A.1939, imposes upon the state auditor the duty to investigate any claim presented and " * * * If such an investigation discloses that all or any por-

tion of any claim is not for *actual public purpose,* connected with the activities of the office, board, commission, or department where the claim originated, he shall refuse to draw a warrant, except for such amount of each claim as appears to be for an *actual public purpose.* * * *." (Emphasis supplied.)

The auditor not only may, but must therefore, decline to draw a warrant in payment of any claim presented by the board of regents when upon investigation she determines that said claim was not for a public purpose. Fairfield v. W. J. Corbett Hardware Co., 25 Ariz. 199, 215 P. 510. Section 12-501 provides that: "Whenever any person whose duty it is to approve, audit, allow, or pay, claims or demands upon the state, shall approve, audit, allow or pay or consent to, or connive at, the approving, auditing, allowing, or paying of, any claim or demand against the state not authorized by law, such person, and the party in whose favor such claim or demand was made, shall be liable for any money thereby procured, and twenty (20) per cent additional thereon, and legal interest upon such payment from the date thereof."

In the case of Proctor v. Hunt et al., 43 Ariz. 198, 29 P.2d 1058, where suit was brought against the state auditor and others, under this section, we held that if the claim appeared upon its face to be for a public purpose and the auditor in the exercise of his discretion found it to be for a public purpose he was not liable under this section of the statute for authorizing its payment. In other words, the court said the auditor was not bound to minutely investigate every claim in order to relieve himself of liability but recognized the duty of the auditor to determine whether or not said claim was for a public purpose.

In determining whether a claim is for a public purpose the state auditor acts in a quasi-judicial capacity and performs a purely judicial function in that she is called upon to exercise a discretion vested in her by law to say whether or not the claim presented is for a public purpose. We held in Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz. 77, 191 P. 2d 169, 174, that "An act is ministerial where the law requiring it to be performed, prescribes the time, manner, and occasion of its performance with such certainty that nothing remains for judgment or discretion." An official act is judicial when it is the result of judgment or discretion based upon evidence gathered.

The auditor was clearly exerising a discretion in determining whether the claims in question were or were not for a public purpose.

In 34 Am.Jur., Mandamus, section 68 at page 858 we find the following statement: " * * * whenever an element of discretion enters into the duty to be performed, the functions of mandatory authority are shorn of their customary potency and become powerless to dictate terms to that discretion. * * *."

Mandamus will issue to compel an officer, who refuses to act, to exercise a dis-

cretion vested in him but it may not direct how such discretion shall be exercised. Maricopa County Municipal Water Conservation District No. 1 v. La Prade, 45 Ariz. 61, 40 P.2d 94. That question, however, is not involved in this case. The state auditor twice exercised her discretion promptly as the law required and refused to issue her warrant therefor upon the ground that she found the claims to be not for a public purpose and the Governor exercised his discretion and likewise rejected said claims. No appeal lies from the rejection of said claims because none is given by the statute. This does not deprive the creditors whose claims were refused from their legal remedy. They may bring an action in the proper court against the state, or against the state and the board of regents as the circumstances may require, to enforce payment thereof. State v. Miser, 50 Ariz. 244, 72 P.2d 408.

Mandamus is not a substitute for, and cannot be resorted to in civil proceedings to subserve the purpose of an appeal or writ of error. 34 Am.Jur., Mandamus, section 40.

In accordance with the universal rule, this court has on a number of occasions stated that mandamus will not lie to compel an officer, board or inferior tribunal vested with discretionary power to exercise such discretion in a particular manner; that while action of some kind will be compelled by mandamus where such action is refused that said officers, board or tribunal must be left free to exercise such discretion and to form such judgment as is deemed justified by the facts.

We have so often enunciated this rule that I deem the citation of authorities unnecessary.

It seems to me that the conclusion is inescapable that if the court has not the power or authority in the first instance to direct that the discretion of such officers, board or tribunal be performed in a particular manner designed to reach some particular result then it cannot, after such discretion has been exercised and judgment pronounced, require such officer, board or tribunal by mandamus to change said judgment and compel something to be done which it could not do originally. To hold that it may do so constitutes a contradiction in the law.

Justice Cardozo, speaking for the Supreme Court of the United States on this subject in the case of Interstate Commerce Commission v. United States, 289 U.S. 385, 53 S.Ct. 607, 611, 77 L.Ed. 1273, at pages 1278, 1279, said: " * * * The Commission heard the complaint and proceeded to a decision. If the mandamus were to stand, the result would not be to compel the Commission to adjudicate the cause, for that it has already done; the result would be to compel an adjudication in a particular way. The rule is elementary that this is not the function of the writ. Mandamus is an appropriate remedy to compel a judicial officer to act. It may not be used as a substitute for an appeal or

writ of error to dictate the manner of his action." Interstate Commerce Commission v. United States, 260 U.S. 32, 34, 43 S.Ct. 6, 67 L.Ed. 112, 114; Wilbur v. United States, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809, 816; Interstate Commerce Commission v. New York, N. H. & H. R. Co., 287 U.S. 178, 204, 53 S.Ct. 106, 77 L.Ed. 248.

To the same effect is Bismarck Tribune Co. v. Wolf, et al., 64 N.D. 656, 255 N.W. 569. The court in this case cites High Legal Remedies, 2d Ed., 149, et seq.; Ex parte Newman, 14 Wall. 152, 81 U.S. 152, 20 L.Ed. 877, and others.

In the case of People ex rel. Francis v. Common Council of Troy, 78 N.Y. 33, 34 Am.Rep. 500, the court held that where the city council had exercised discretion vested in it by the city charter that mandamus did not lie to compel it to change the decision it had reached.

The instant case is distinguishable from Fairfield v. W. J. Corbett Hardware Co., supra, in that the auditor in the Fairfield case did not question the fact that the claim was for a public purpose but rejected it upon the ground that the state had a set-off against the creditors whose claims were assigned to the Corbett Hardware Company. The law vested in him no such authority and the writ properly directed him to perform his purely ministerial duty. In the case of Barry v. Phoenix Union High School District, supra, the mandamus properly issued in that case for the reason

that the statute defining the duties of the county school superintendent does not vest in him the discretion that is vested in the state auditor.

Section 54-301, A.C.A.1939, expressly provides: " * * * On the order of the board of school trustees of any district, he (the county school superintendent) shall draw his warrant on the county treasurer for all necessary expenses against the school fund of any such district; * * *."

It will be seen that no discretion whatever may be exercised by the county school superintendent under the language of the statute. His duties in that particular were purely ministerial.

The office of the writ of mandamus has been extended upon rational and logical reasoning in many jurisdictions to authorize the court to consider the constitutionality of a law where the legality of the action of an officer, board or inferior tribunal depends upon whether or not such law is constitutional and when such officer or board may be liable if funds are illegally disbursed. 34 Am.Jur., Mandamus, section 81 to 90, inc.; Department of State Highways v. Baker, 69 N.D. 702, 290 N.W. 257, 129 A.L.R. 925; Welch v. Swasey, 193 Mass. 364, 79 N.E. 745, 23 L.R.A.,N.S., 1160, 118 Am.St.Rep. 523, Id., 214 U.S. 91, 29 S.Ct. 567, 53 L.Ed. 923. This is admittedly an enlargement of the original functions of mandamus and is denied in many jurisdictions. State ex rel. Atlantic Coast Line R. Co. v. State Board of

Equalizers, 84 Fla. 592, 94 So. 681, 30 A.L. **2.**
R. 362; Threadgill v. Cross, 26 Okl. 403,
109 P. 558, 138 Am.St.Rep. 964. This
court has passed upon the constitutionality
of statutes in a number of cases when the
question was raised in mandamus proceed-
ings including the case of Earhart v. Froh-
miller, 65 Ariz. 221, 178 P.2d 436 and
Hernandez v. Frohmiller, 68 Ariz. 242, 204
P.2d 854.

It is my considered judgment that the
use of the writ of mandamus has been more
or less abused in this state largely perhaps
because such improper use has not been
challenged. The fact that such a condition
has obtained, does not warrant a further
continuance of its abuse. I am therefore
constrained to hold that the writ in this
case should be quashed and the creditors
relegated to their remedy at law.