NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VERNON R. LALLISS, *Plaintiff/Appellant*,

*v.*

NATIONAL LIABILITY & FIRE
INSURANCE, CO., *Defendant/Appellee*.

No. 1 CA-CV 25-0086

FILED 12-30-2025

Appeal from the Superior Court in Maricopa County
No. CV2022-093561
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

COUNSEL

Keith R. Lalliss Attorney at Law, Mesa
By Keith R. Lalliss
*Counsel for Plaintiff/Appellant*

The Cavanagh Law Firm, PA, Phoenix,
By John K. Wittwer, Karen Stafford, Sydney M. Lewin
*Counsel for Defendant/Appellee*

Quintairos Prieto Wood & Boyer PA, Scottsdale
By Anthony J. Fernandez and Cody N. Crosier
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Michael J. Brown and Judge Andrew J. Becke joined.

---

**G A S S**, Judge:

¶1          Lalliss sued National Liability and Fire Insurance Company based on purported assignments of Joshua Kosar's workers compensation benefits and bad-faith claims. The superior court granted summary judgment for National on both. Because Lalliss offered no evidence of National issuing a warrant or similar negotiable instrument to Kosar for his workers compensation benefits before Kosar assigned his claim to Lalliss and because Lalliss offered no evidence of Kosar's alleged bad-faith injuries, the court affirms.

## FACTUAL AND PROCEDURAL HISTORY

¶2          Kosar worked for a construction company when he was injured at his workplace. Kosar sought medical treatment and was placed on a no-work status from March 26, 2018, to July 12, 2018. Kosar filed a claim for workers compensation benefits. National, working through a third-party administrator, accepted Kosar's claim.

¶3          National asked Kosar for medical documents, which Kosar did not provide until May 24, 2018, nearly two months after he submitted his claim. Because the medical report said Kosar could return to a light-duty status, National issued a temporary disability payment to Kosar, reflecting the date from receiving the medical documents (May 24, 2018) to the date he was released to work (June 28, 2018). National then filed a notice of claim status closing Kosar's claim. Kosar had 90 days to dispute the status, but he did not.

¶4          Two years later (in 2020), Lalliss asked the Industrial Commission of Arizona to investigate. The Commission scheduled and held a hearing, which National did not attend. Because Kosar's employer would not let him return to work until the doctor fully released him, he remained out of work from March 26, 2018 to July 12, 2018. The Commission issued an order awarding Kosar temporary disability compensation for the full period he was not working. National did not pay

the Commission's 2020 award. A year later (in 2021), Kosar assigned his workers compensation claim to Vernon Lalliss for rent he owed from 2017 to 2021.

**¶5**     Lalliss sued National, asking for the full payment of Kosar's workers compensation benefits from March 26, 2018 to July 12, 2018, and alleging National acted in bad faith because it did not pay the full amount under the Commission's 2020 award and did not respond to Lalliss's requests. National moved for summary judgment. The superior court granted National's motion because Lalliss did not produce evidence supporting his claims.

**¶6**     The court has jurisdiction over Lalliss's timely appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, and 12-2101.A.1.

## DISCUSSION

**¶7**     Lalliss argues the superior court erred in granting summary judgment for National because Kosar assigned the Commission's 2020 award against National to Lalliss and National failed to pay it. National argues the Commission's award was not assignable and Lalliss did not provide evidence to support his bad-faith claim.

**¶8**     Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and "the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990) (recognizing the "essence of the summary judgment rule"). "This court reviews a grant of summary judgment *de novo*, viewing the facts and reasonable inferences in the light most favorable to the party opposing the motion and will affirm for any reason supported by the record, even if not explicitly considered by the superior court." *CK Fam. Irrevocable Tr. No. 1 v. My Home Grp. Real Est. LLC*, 249 Ariz. 506, 508 ¶ 6 (App. 2020) (citation omitted).

## I.     Kosar's assignment to Lalliss was defective because Kosar could not assign his workers compensation benefits to Lalliss until a warrant was issued.

**¶9**     Lalliss argues Kosar properly assigned his workers compensation benefits to Lalliss based on the Commission's 2020 award.

**¶10**     Under A.R.S. § 23-1068.A, "[c]ompensation, whether determined or not, is not, prior to the delivery of the warrant therefor,

3

assignable." Subsection 23-1068.D waives the warrant requirement and allows assignment in the following, inapplicable circumstances: "for the payment of support as defined in § 25-500, spousal maintenance and the fee for handling child support and spousal maintenance payments authorized by § 25-510." The assignment is defective unless Lalliss shows National had delivered a warrant to Kosar before he signed the assignment. *See id.*

¶11 To resolve the issue, the court must engage in statutory interpretation of A.R.S. § 23-1068.A. The Supreme Court of Arizona has already established the reason for not allowing an earlier assignment is to "render it impossible for the injured employee or his dependents to assign his compensation before it was paid to him or them." *Vukovich v. Ossic*, 50 Ariz. 194, 196 (1937). The parties struggled to identify what the term "warrant" means in this context. The court does not.

¶12 The court reviews *de novo* questions of statutory interpretation. *J.L.F. v. Ariz. Health Care Cost Containment Sys.*, 208 Ariz. 159, 161 ¶ 10 (App. 2004). A statute's plain language guides the court's interpretation. *See Ariz. Advoc. Network Found. v. State*, 250 Ariz. 109, 114 ¶ 19 (App. 2020). If the statute's plain language is unambiguous, the court "must give effect to that language without employing other rules of statutory construction." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323 ¶ 11 (App. 2017); *see also Special Fund Div. v. Indus. Comm'n of Ariz.*, 232 Ariz. 110, 113 ¶ 12 (App. 2013) (recognizing the same as *Parsons*). In doing so, the court gives "terms their ordinary and commonly accepted meaning, unless the legislature has provided a specific definition." *JH2K I LLC v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, 310 ¶ 9 (App. 2019).

¶13 The court determines "the plain meaning of the words the legislature" chose by viewing those words "in their broader statutory context." *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (citation omitted). "In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Id.* (quoting *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017)). And at all times, the court is "constrained from rewriting the law under the guise of interpreting it even if [the court] divine[s] a more desirable intended outcome than the text allows." *Ariz. Free Enter. Club v. Hobbs*, 253 Ariz. 478, 489 ¶ 38 (2022).

¶14 The parties focused on the term warrant as used in many contexts—a court order directing law enforcement to take a specific action, such as arresting a person or searching a location. *See* A.R.S. § 13-3915. But

that is not the only commonly understood meaning for the term warrant. In the context of debts (especially government debts), warrant has a different, long-standing, common meaning. It is the equivalent of a negotiable check. *See, e.g.*, *Cain v. Horne*, 220 Ariz. 77, 83 ¶ 26 (2009) ("That the checks **or warrants** first pass through the hands of parents is immaterial; once a pupil has been accepted into a qualified school under either program, the parents or guardians have no choice; they must endorse the check or warrant to the qualified school."(emphasis added)); *Bd. of Regents of Univ. & State Colleges v. Frohmiller*, 69 Ariz. 50, 55 (1949) (explaining when a government actor must issue a warrant in payment of a debt).

**¶15**       And that is the meaning of warrant in the context of assignment of workers compensation benefits. Though Arizona statute does not define the term, other sections in Title 23 use it in the same way. Section 23-1068 deals with the assignment of workers compensation benefits when due. Similarly, subsection 23-353.C deals with an employer's duty to pay employees their wages when due. Subsection C says,

> Every employer, including this state and its political subdivisions, shall pay wages or compensation due an employee under this section in lawful money of the United States by **negotiable check, draft, money order or warrant,** in the case of the state or any political subdivision, which can be immediately redeemed in cash at a bank or other financial institution, payable on demand or by deposit in a financial institution of employee's choice and dated not later than the day upon which the **check, draft, money order or warrant** is given, and not otherwise.

A.R.S. § 23-353.C (emphasis added).

**¶16**       In considering the statute in *pari materia*, the court applies the canon of *noscitur a sociis*, which "holds that words grouped in a list should be given related meanings." *State ex rel. Brnovich v. City of Phoenix*, 249 Ariz. 239, 244–45 ¶ 23 (2020) (citation omitted). Under that canon, a warrant in this context functions like a "negotiable check, draft, [or] money order." *See* A.R.S. § 23-353.C. It is a legally enforceable obligation to force the party who issued the warrant to make good on the underlying payment obligation.

**¶17**       This use of warrant appears throughout Arizona's statutes. *See, e.g.*, A.R.S. §§ 11-632 (addressing when a county treasurer may

issue a duplicate warrant); 11-645 (discussing when county treasurers' may invest in warrants, substitute checks, and electronic funds transfers); 15-304 (discussing when county school superintendents may issue warrants for necessary expenses); and 15-209 (discussing the Arizona Department of Administration's duty to draw certain warrants and the Treasurer's duty to pay those warrants).

**¶18**         Lalliss offered no evidence Kosar ever received a warrant or something similar to it, such as a "negotiable check, draft, [or] money order." *See* A.R.S. § 23-1068; *see also* A.R.S. § 23-353.C (using "check, draft, money order or warrant"). Lalliss offered no evidence to show Kosar had a warrant for the payment of his workers compensation benefits when he signed the assignment on November 21, 2021. The superior court thus did not err when it ruled Lalliss's purported assignment was defective.

## II.    The superior court did not err when it granted summary judgment for National on Lalliss's bad-faith claim because Lalliss did not produce admissible evidence to support Kosar's claim.

**¶19**         Lalliss pursues a bad-faith claim against National based on Kosar's assignment. National argues the assignment is invalid, and even if it is not, Lalliss did not offer admissible evidence to oppose National's summary judgment motion. The court need not resolve the validity of Kosar's assignment because the superior court correctly ruled Lalliss failed to produce admissible evidence to defeat summary judgment.

**¶20**         Arizona courts imply "a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986). In the insurance context, a bad-faith claim "arises when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action." *Merkens v. Fed. Ins.*, 237 Ariz. 274, 276 ¶ 9 (App. 2015) (citation omitted). A workers compensation carrier commits bad faith if there is an "intentional and unreasonable denial of a claim" or an "intentional and unreasonable failure to process, handle, or pay the claim." *Id.* at 277 ¶ 14. To prevail, Lalliss must prove:

> (1) the carrier and the injured worker had an insurer-insured relationship, or the worker is a third-party beneficiary of the policy . . . ; (2) the absence of a reasonable basis for denying benefits of the policy . . . ; (3) "the carrier's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim," . . . ; and (4) traditional tort damages proximately caused by the denial of workers' compensation benefits rather

6

than the damages resulting from the workplace injury, e.g., damages for pain, humiliation and inconvenience, and pecuniary losses.

*Id.* at 277–78 ¶ 16 (cleaned up).

¶21　　　　Even if the court assumes Lalliss could prove elements 1 through 3, Lalliss came forward with no evidence of Kosar's damages under element 4, let alone the "traditional tort damages proximately caused by the denial of workers' compensation benefits . . . , e.g., damages for pain, humiliation and inconvenience, and pecuniary losses." *Id.* In response to National's motion for summary judgment, Lalliss simply said, "Defendant's attorney contends that Plaintiff has 'no viable claim for bad faith damages.'" Lalliss's only other reference to damages was when he discussed the award for damages in *Zilisch v. State Farm Mutual Auto. Ins.*, 196 Ariz. 234 (2000). All Lalliss said was, "At trial, the jury awarded one million dollars in damages."

¶22　　　　In essence, Lalliss argues he (standing in Kosar's shoes) is entitled to bad-faith damages as a matter of law. He is not. Based on Lalliss's argument, the superior court said:

> Plaintiff has failed to provide the Court with even a scintilla of admissible evidence supporting . . . his bad faith claim. Once Defendant challenged the merits of Plaintiff's claims, Plaintiff was required to present admissible evidence supporting his claims. . . . He failed to do so. And, when questioned about the lack of evidence during the oral argument, Plaintiff's counsel told the Court that Defendant had admitted his allegations. That statement is not supported by the record.

¶23　　　　Lalliss does not even address bad-faith damages in his opening or reply brief. All he says is, "Kosar's attorney discussed an action for bad faith because of the damages suffered by Kosar."

¶24　　　　Lalliss also seeks punitive damages. To recover for punitive damages, a plaintiff must "always prove 'outwardly aggravated, outrageous, malicious, or fraudulent conduct.'" *Saucedo ex rel. Sinaloa v. Salvation Army*, 200 Ariz. 179, 182 ¶ 11 (App. 2011). "The requisite intent and outrageous and egregious conduct must occur in tandem with the conduct giving rise to the injury in order to recover punitive damages." *Id.* at 182 ¶ 13. Lalliss failed to show any evidence to prove punitive damages.

¶25        With no evidence of Kosar's damages, the superior court did not err in granting summary judgment for National on Lalliss's bad-faith claim.

## CONCLUSION

¶26        The court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:              JR